1  L. KIERAN KIECKHEFER, SBN 251978
    KKieckhefer@gibsondunn.com
2  Y. ERNEST HSIN, SBN 201668
    EHsin@gibsondunn.com
3  JOSEPH A. GORMAN, SBN 267553
    JGorman@gibsondunn.com
4  LAUREN DANSEY, SBN 311886
    LDansey@gibsondunn.com
5  CHRISTINA E. MYROLD, SBN 324183
    CMyrold@gibsondunn.com
6  GIBSON, DUNN & CRUTCHER LLP
   One Embarcadero Center, Suite 2600
7  San Francisco, California 94111-3715
   Telephone:    415.393.8200
8  Facsimile:    415.393.8306

9  STUART M. ROSENBERG, SBN 239926
    SRosenberg@gibsondunn.com
10 GIBSON, DUNN & CRUTCHER LLP
   310 University Avenue
11 Palo Alto, California 94301
   Telephone:    650.849.5300
12 Facsimile:    650.849.5333

13 JAMES POOLEY, SBN 58041
    James@pooley.com
14 JAMES POOLEY PLC
   325 Sharon Park Dr. #208
15 Menlo Park, California 94025

16

17 *Attorneys for Defendant APPLIED MATERIALS, INC.*

18          **UNITED STATES DISTRICT COURT**

19          **NORTHERN DISTRICT OF CALIFORNIA**

20 MATTSON TECHNOLOGY, INC., a          CASE NO. 5:23-CV-06071-SVK
   Delaware Corporation,
21                                      **DEFENDANT APPLIED**
                  Plaintiff,            **MATERIALS, INC.'S REPLY IN**
22                                      **SUPPORT OF MOTION TO DISMISS**
          v.                            **AND MOTION TO STRIKE**
23                                      **PLAINTIFF'S FIRST AMENDED**
   APPLIED MATERIALS, INC., a Delaware  **COMPLAINT**
24 Corporation, VLADIMIR NAGORNY, an
   individual, and RENE GEORGE, an      Date:     May 28, 2024
25 individual,                          Time:     10:00 a.m.
                                        Place:    Courtroom 6, 4th Floor
26                Defendants.
                                        The Honorable Susan van Keulen
27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................................... 1

II.     ARGUMENT ............................................................................................................ 2

    A.    Mattson's Alleged Trade Secrets Were Publicly Disclosed and Insufficiently
        Alleged ........................................................................................................... 2

        1.    Mattson's Public Disclosure Compels Dismissal of Its DTSA Claim ........ 2

        2.    Mattson's Un-Alleged, Un-Specific "Combination" Theory Fails ............. 6

        3.    Mattson Fails to Otherwise Allege the Scope of Its DTSA Claim ............. 6

    B.    Mattson Fails to Allege Misappropriation by Applied ........................................... 7

        1.    Mattson Fails to Sufficiently Allege Applied "Knew or Should Have
                Known" It Was Acquiring, Using, or Disclosing Mattson's Purported
                Trade Secrets ....................................................................................... 8

        2.    Mattson's Vicarious Liability Argument Fails .......................................... 8

    C.    The Remaining State-Law Claims Are Superseded by CUTSA ............................ 9

    D.    The State-Law Claims Fail to State a Claim ...................................................... 11

    E.    The State-Law Claims Should Be Stricken Under the Anti-SLAPP Statute ........ 13

    F.    Mattson's Request for Punitive Damages Should Be Stricken ............................ 14

    G.    Mattson Should Not Be Given Leave to Amend .................................................. 15

III.    CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

Page(s)

*3D Sys., Inc. v. Wynne*,
  2024 WL 1099677 (S.D. Cal. Mar. 12, 2024) ............................................................................10

*AllRounds, Inc. v. eShares, Inc.*,
  2021 WL 2945532 (N.D. Cal. July 14, 2021) ..............................................................................4

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019) .......................................................................................7

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. Co.*,
  2009 WL 10709716 (N.D. Cal. Nov. 13, 2009) .........................................................................10

*Applied Materials v. Advanced Micro-Fabrication Equip., Inc.*,
  2008 WL 11398913 (N.D. Cal. Feb. 29, 2008) ..........................................................................11

*Beckmann v. Synertech P/M, Inc.*,
  2011 WL 13355951 (C.D. Cal. Dec. 1, 2011) ...........................................................................12

*Brislane v. Brown*,
  2017 WL 528488 (C.D. Cal. Feb. 8, 2017) ................................................................................15

*Buyers Prods. Co. v. CURT Mfg. LLC*,
  2017 WL 1498154 (W.D. Wis. Apr. 26, 2017) ............................................................................4

*Career Sys. Dev. Corp. v. Am. Home Assurance Co.*,
  2010 WL 11636254 (N.D. Cal. Aug. 11, 2010) .........................................................................15

*Cellars v. Pac. Coast Packaging, Inc.*,
  189 F.R.D. 575 (N.D. Cal. 1999) ...............................................................................................12

*Cisco Sys., Inc. v. Chung*,
  2023 WL 2622155 (N.D. Cal. Mar. 22, 2023) .............................................................................8

*Citcon USA, LLC v. Miao*,
  2021 WL 3402783 (N.D. Cal. Aug. 4, 2021) ...............................................................................8

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,
  2021 WL 3042616 (N.D. Cal. July 19, 2021) ................................................................10, 11, 12

*Flores v. Wells Fargo Bank, N.A.*,
  2012 WL 2427227 (N.D. Cal. June 26, 2012) ...........................................................................15

*Hernandez v. Container Store, Inc.*,
  2024 WL 72657 (C.D. Cal. Jan. 3, 2024) ..................................................................................15

*Ideal Innovations, Inc. v. United States*,
  139 Fed. Cl. 737 (2018) ...............................................................................................................3

*In Def. of Animals v. Sanderson Farms, Inc.*,
  2021 WL 4243391 (N.D. Cal. Sept. 17, 2021) ..........................................................................15

ii

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020)..................................................................................7

*IQE plc v. Newport Fab, LLC*,
    2022 WL 6615775 (C.D. Cal. Sept. 28, 2022).................................................7, 13, 14

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)..................................................................................4

*MACOM Tech. Sols. Inc. v. Litrinium, Inc.*,
    2019 WL 4282906 (C.D. Cal. June 3, 2019)...........................................................4

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008)................................................................................4

*Masimo Corp. v. Apple Inc.*,
    2021 WL 8892168 (C.D. Cal. Apr. 21, 2021)..................................................4, 5, 8

*Mehta v. Robinhood Fin. LLC*,
    2021 WL 6882377 (N.D. Cal. May 6, 2021).........................................................12

*Metricolor LLC v. L'oreal S.A.*,
    2020 WL 3802942 (C.D. Cal. July 7, 2020)...........................................................4

*Mindys Cosms, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010)................................................................................14

*Navigation Holdings, LLC v. Molavi*,
    2020 WL 5074307 (N.D. Cal. Aug. 25, 2020).......................................................9

*Nelson Bros. Prof. Real Estate LLC v. Jaussi*,
    2017 WL 8220703 (C.D. Cal. Mar. 13, 2017).......................................................5

*Neutron Holdings, Inc. v. Hertz Corp.*,
    2023 WL 3919465 (N.D. Cal. June 8, 2023)....................................................7, 13

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n.*,
    298 F.3d 768 (9th Cir. 2002)................................................................................11

*Peralta v. Cal. Franchise Tax Bd.*,
    124 F. Supp. 3d 993 (N.D. Cal. 2015)..................................................................15

*Perlan Therapeutics, Inc. v. Superior Ct.*,
    178 Cal. App. 4th 1333 (2009)..............................................................................7

*In re Providian Credit Card Cases*,
    96 Cal. App. 4th 292 (2002)..................................................................................2

*Qiang Wang v. Palo Alto Networks, Inc.*,
    2013 WL 415615 (N.D. Cal. Jan. 31, 2013).........................................................10

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998)................................................................................6

*Sieler v. Atieva Inc.*,
    2022 WL 18402494 (N.D. Cal. Dec. 16, 2022).....................................................14

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010) ............................................................................. 10

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................................ 3

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2008) ............................................................................ 4

*Sylabs, Inc. v. Rose*,
    2023 WL 8813517 (N.D. Cal. Dec. 19, 2023) ................................................ 1, 11

*U.S. Legal Support, Inc. v. Hofioni*,
    2013 WL 6844756 (E.D. Cal. Dec. 20, 2013) ................................................... 8, 9

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
    617 F. Supp. 2d 938 (N.D. Cal. 2007) .................................................................. 6

*United States v. Zander*,
    624 F. App'x 563 (9th Cir. 2015) ......................................................................... 5

*Universal Electronics, Inc. v. Roku, Inc.*,
    2019 WL 1877616 (C.D. Cal. Mar. 5, 2019) ........................................................ 4

*Urica, Inc. v. Medline Indus., Inc.*,
    2011 WL 13128408 (C.D. Cal. Oct. 5, 2011) ..................................................... 11

*Veronica Foods Co. v. Ecklin*,
    2017 WL 2806706 (N.D. Cal. June 29, 2017) ...................................................... 3

*Winding v. NDEX W., LLC*,
    543 F. App'x 683 (9th Cir. 2013) ....................................................................... 15

**Statutes**

18 U.S.C. § 1836 ...................................................................................................... 8

18 U.S.C. § 1839 ...................................................................................................... 2

**Regulations**

37 C.F.R. § 1.56 ...................................................................................................... 6

## I.   INTRODUCTION

In response to Applied's first motion to dismiss, Mattson filed a first amended complaint ("FAC"), but its amendments do not cure the many fatal flaws with each of Mattson's claims.

Mattson's claim for violation of the Defend Trade Secrets Act ("DTSA") fails because the only technology alleged with any specificity in the FAC are seven aspects of the Green and Grey Path that were publicly disclosed *by Mattson* and therefore cannot qualify as trade secrets. Mattson does not rebut that these aspects were publicly disclosed, but instead seeks to delay resolution of this issue to a later stage of the case, contrary to established law. Mattson's attempt to expand its DTSA claim beyond the publicly disclosed aspects, by reference to vague and undefined additional purported trade secrets, fails to provide Applied with notice of its claim. Thus, Mattson has not alleged any trade secret that can survive a motion to dismiss. Moreover, it did not allege misappropriation *by Applied*. Mattson barely disputes its failure to allege facts showing knowledge by Applied, and instead focuses on a baseless vicarious liability theory that is not even alleged in the FAC. This claim should be dismissed.

Mattson's five state-law claims are preempted by the California Uniform Trade Secrets Act ("CUTSA") because they stem from the same nucleus of facts as the alleged trade secret misappropriation. Mattson's two arguments in response fail. First, Mattson's state-law claims are not distinct from its trade secret claim because they are premised on Applied's alleged interference with the Individual Defendants' obligations *relating to Mattson's trade secrets* under their employment contracts with Mattson. As set forth below, courts have consistently rejected Mattson's argument. Second, Mattson's state-law claims are preempted even though Mattson's alleged trade secrets do not qualify as trade secrets. Courts have also repeatedly rejected this argument. *Sylabs, Inc. v. Rose*, 2023 WL 8813517, at *9 (N.D. Cal. Dec. 19, 2023) (van Keulen, J.) ("CUTSA preempts a plaintiff's claims based on misappropriation of information that does not qualify as a trade secret.") (collecting authority). Each state-law claim also fails to state a claim, another basis for dismissal.

The Court should also grant Applied's motion to strike pursuant to the California anti-SLAPP statute, as well as the motion to strike Mattson's conclusory request for punitive damages.

Finally, the FAC should be dismissed with prejudice because Mattson has not asserted one new fact it would allege in a second amended complaint that would save it claims.

## II.     ARGUMENT

**A.     Mattson's Alleged Trade Secrets Were Publicly Disclosed and Insufficiently Alleged**

The DTSA claim should be dismissed because the only technology alleged with any particularity consists of seven aspects "related to" Mattson's Green and Grey Path projects that were publicly disclosed *by Mattson* long before any of the events at issue here (MTD 9-14), and as a result, are not trade secrets as a matter of law.  As Applied explained, "[p]ublic disclosure, that is the absence of secrecy, is fatal to the existence of a trade secret" (*In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002)), because a trade secret is information that derives independent economic value from not being generally known and that has been the subject of reasonable efforts to be kept secret. *See* 18 U.S.C. § 1839(3).  Mattson does not directly engage with this argument.  Instead, it deflects by arguing that its DTSA claim should survive because: (i) the seven Green and Grey Path aspects were specifically identified, even though not properly alleged as secret; (ii) it is improper to analyze whether the alleged trade secrets are public on a motion to dismiss, even though the case law is to the contrary; (iii) treating the aspects as a "combination" trade secret might save the claim, even though no trade secret was pleaded as a combination; and (iv) unspecified and unasserted trade secrets theoretically *could* save the misappropriation claim.  Mattson's circular argument highlights the very reasons why its DTSA claim fails:  it has not sufficiently identified any trade secrets, because they were either publicly disclosed or not alleged.  That is fatal to its claim.

### 1.     Mattson's Public Disclosure Compels Dismissal of Its DTSA Claim

Mattson argues that "the FAC clearly and specifically defines trade secrets related to Mattson's Green and Grey path projects" (Opp. 5); but those purported trade secrets were publicly disclosed.  *See* MTD at 9-14; Dkt. 58 (Exs. A-L) (the "RJN Documents").

***Mattson does not dispute that it publicly disclosed the alleged technology.***  Remarkably, in its Opposition, Mattson does not substantively dispute that it disclosed the alleged trade secrets in the RJN Documents (specifically, RJN Exs. A-E and L).  Instead, Mattson deflects and argues the RJN Documents "will clearly be the subject of vigorous dispute between the parties in fact and expert discovery" (Opp. 11); but such conclusory attorney arguments are not sufficient to survive a motion to dismiss.  *See* MTD 4.  Mattson points to no allegation (and offers no argument) showing such a dispute.

Mattson (as the patent applicant) and its counsel (as the firm that prosecuted those applications) are certainly in a position to elucidate any dispute with what the Opposition calls Applied's "self-serving conclusion" and "incorrect interpretations" of the RJN Documents.  *See* Opp. 10.   Mattson also criticizes Applied's grouping of the seven aspects, under the Grey Path (for four) and Green Path (for three) headings (Opp. 10); but it does not identify any factual inaccuracy with Applied's identification of the disclosed enumerated "aspects" in the RJN Documents.  *Compare* MTD 9-15 *with* Opp. 9-13.  Nor could it, given that *Mattson* grouped the trade secrets that way in its FAC (at ¶¶ 25-30).  Mattson asks the Court to treat as true its unsupported assertion that the alleged trade secrets were not disclosed (Opp. 10), but the Court need not accept conclusory allegations that contradict judicially noticeable documents.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001), *as amended on denial of reh'g*, 275 F.3d 1187, 1188 (9th Cir. 2001) ("The uncontested facts set forth in the arbitration award effectively and persuasively rebut the conclusory allegations [in the pleading].").  Apart from Mattson's conclusory allegations, it is uncontested that the seven identified aspects "related to the 'Green Path' and 'Grey Path'" were publicly disclosed in the RJN Documents.

     ***The Court can and should address public disclosure, including RJN Documents.***  Contrary to Mattson's arguments, courts regularly analyze whether trade secrets were publicly disclosed in ruling on a motion to dismiss.  *See* MTD 4, 8 & RJN 1 (collecting cases, largely unrebutted by Mattson).  For instance, in *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706 (N.D. Cal. June 29, 2017), the only case Applied cited that Mattson addresses, the court, on a motion to dismiss, analyzed materials submitted for judicial notice and compared those materials to plaintiff's trade secret allegations.  The court held that "while Veronica Foods alleges that it takes steps to protect" a broad category of trade secrets (customer lists), "the material Defendants have submitted for judicial notice demonstrates that Veronica Foods itself has publicized" at least certain of those lists and "[i]n light of that disclosure," the conclusory allegations were insufficient and more "specific allegations" were required to plausibly allege a trade secret claim.  *Id.* at *14.  Here, the judicially noticeable documents demonstrate that *all* of the purported trade secrets were publicly disclosed, something Mattson does not specifically take on.  As a result, the conclusory allegations are insufficient and the claim should be dismissed.  *See also Ideal Innovations, Inc. v. United States*, 139 Fed. Cl. 737, 745-46 (2018) (dismissing complaint at

12(b)(1) pleadings phase after finding "Plaintiffs' trade secrets were disclosed by [Plaintiff's] Patent");

*Masimo Corp. v. Apple Inc.*, 2021 WL 8892168, at *2 (C.D. Cal. Apr. 21, 2021) (taking judicial notice of patent documents at 12(b)(6) pleadings phase).

Several of Mattson's cited authorities (Opp. 6, 9; RJN Obj. 2-3) actually *support* Applied's position. In *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008), the court stated it "need not accept as true conclusory allegations . . . contradicted by documents referred to in the complaint." In *AllRounds, Inc. v. eShares, Inc.*, 2021 WL 2945532, at *1 (N.D. Cal. July 14, 2021), the court examined the proffered public disclosures to determine whether they disclosed the trade secrets. Unlike here, the plaintiff identified in an under-seal filing "aspects of its alleged trade secrets that were not disclosed," sufficient to survive a motion to dismiss. *Id.* By contrast, Mattson's Opposition fails to contest any aspect of the alleged trade secrets disclosed in the RJN Documents. In *MACOM Tech. Sols. Inc. v. Litrinium, Inc.*, 2019 WL 4282906, at *6-7 (C.D. Cal. June 3, 2019), the defendant argued that a series of patents showed that the type of "subject matter" was generally known in the trade, but the court declined to address the issue. The defendant did *not* argue that the plaintiff publicly disclosed the specific alleged trade secrets in its *own* patent filings, as here. Likewise, *Metricolor LLC v. L'oreal S.A.*, 2020 WL 3802942, at *7 (C.D. Cal. July 7, 2020) and *Universal Electronics, Inc. v. Roku, Inc.*, 2019 WL 1877616, at *1 n.1 (C.D. Cal. Mar. 5, 2019), which declined to take judicial notice of the "disputed legal effect of prior art" on a patent claim or whether patent filings combined with Wayback Machine documents disclosed a trade secret, do not undermine the general principle that prior disclosure of a trade secret in a patent filing defeats the secrecy element and that a court may resolve that issue at the pleadings stage. MTD 4, 8; RJN 1. Mattson's remaining cases (RJN Obj. 2-3) are inapposite; they involve claim construction (*Buyers Prods. Co. v. CURT Mfg. LLC*, 2017 WL 1498154, at *2 (W.D. Wis. Apr. 26, 2017)), a post-trial *Daubert* motion (*Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008)), and judicial notice of state of mind in a securities case (*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1001 (9th Cir. 2018)).

Thus, the Court should address whether Mattson publicly disclosed the purported trade secrets by comparing them to the RJN Documents. Mattson's remaining objections to the RJN are meritless. First, it complains that the exhibits are excerpted, but that is common practice in this district; the full

voluminous exhibits are readily available publicly and Applied offered to submit them at the Court's request. Mattson complains that Applied used red boxes to show the relevant portions for the Court's convenience (which is also common practice), citing two inapposite cases: one involving calculations affixed to tax forms submitted for judicial notice on appeal (*United States v. Zander*, 624 F. App'x 563 (9th Cir. 2015)), and one involving a website printout with the numbers 1-13 written on it (*Nelson Bros. Prof. Real Estate LLC v. Jaussi*, 2017 WL 8220703 (C.D. Cal. Mar. 13, 2017)). Second, Mattson argues Applied is asking the Court to take notice of the *truth* of the matter asserted in the RJN Documents. RJN Obj. 2. Not so. Applied is asking the Court to take judicial notice *that* the material was disclosed, not that the technology works as described. *See* RJN 1. Such notice is proper.

Finally, even if the documents were not judicially noticeable (they are), Exhibits A-E and L (Mattson's prior disclosures) are separately subject to consideration because Mattson refers to and relies on them in the FAC (at ¶¶ 25-30). *See Masimo*, 2021 WL 8892168, at *2; Dkt. 58 at 1.

This chart, summarizing the above unrebutted argument, compels dismissal of the DTSA claim:

| Alleged Trade Secret | Where Disclosed | Mattson's Response Re Disclosure |
|---|---|---|
| **Grey Path** | | |
| 1. Moving an insert relative to a coil. FAC ¶¶ 26-30, 63. | RJN Ex. E ¶¶ [0018], [0020]-[0021], [0030]-[0032], Figs. 1, 3 & 4; RJN Ex. B ¶¶ [0019], [0021]-[0022], [0031]-[0033], Figs. 1, 3 & 4. MTD 9-10 & n.1. | No factual dispute. |
| 2. Relative positioning of the insert to the coil. *Id.* ¶¶ 26-30, 62, 63. | RJN Ex. L, Fig. 1; RJN Ex. A, Fig. 1; RJN Ex. E ¶¶ [0004], [0018], [0020]-[0021], [0030]-[0032], Figs. 1, 3 & 4; RJN Ex. B ¶¶ [0019], [0021]-[0022], [0031]-[0033], Figs. 1, 3 & 4. MTD 10-11. | No factual dispute. |
| 3. Fine-tuning that insert to coil positioning. *Id.* ¶¶ 26-30, 63. | RJN Ex. E ¶¶ [0004], [0018], [0020]-[0021], [0030]-[0032], Figs. 1, 3 & 4; RJN Ex. B ¶¶ [0019], [0021]-[0022], [0031]-[0033], Figs. 1, 3 & 4. MTD 11-12. | No factual dispute. |
| 4. Adjusting insert to coil alignment to achieve desired performance. *Id.* | RJN Ex. A ¶ [0043]; RJN Ex. E ¶¶ [0057], [0017]-[0021]; RJN Ex. B ¶¶ [0005], [0018]-[0022], [0058]. MTD 12. | No factual dispute. |
| **Green Path** | | |
| 5. Second coil at bottom height. *Id.* ¶¶ 26-30, 58-59. | RJN Ex. A ¶¶ [0017]-[0018], [0031]-[0032], [0046], [0048]-[0049], [0056], Figs. 2-3 & 4. MTD at 12-13. | No factual dispute. |
| 6. Magnetic field concentrator with bottom coil. *Id.* | RJN Ex. C ¶ [0053], Fig. 9. MTD 13-14. | No factual dispute. |
| 7. Benefit of using magnetic field concentrator with bottom coil. *Id.* ¶¶ 26-30, 59. | RJN Ex. C ¶ [0043], Figs. 1-5; RJN Ex. A ¶¶ [0017]-[0018]; RJN Ex. D, ¶ [0087], Figs. 3A-4. MTD 14. | No factual dispute. |

**2.      Mattson's Un-Alleged, Un-Specific "Combination" Theory Fails**

Having no other response, Mattson offers the theory that its trade secrets *might* be found in some unspecified combination of the seven Green and Grey Path aspects (Opp. 11-12), citing *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 940 (N.D. Cal. 2007.  Where, as here, "the elements of the combination have been disclosed publicly," a combination can only be a trade secret if (i) "the combination itself has not" been publicly disclosed and (ii) one skilled in the art could not "view the nonsecret elements and replicate the combination without undue difficulty." *UniRAM*, 617 F. Supp. 2d at 942.  Here, Mattson publicly disclosed the elements of the purported combination—the seven Green and Grey Path aspects.  *Supra* II.A.1.  Mattson does not plead (or even attempt to explain) what the combination is, whether it has been publicly disclosed, and whether one could replicate the combination by viewing the nonsecret parts of it.  That is wholly insufficient; Mattson cannot amend its FAC through speculative argument in an opposition brief.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998).

Lastly, Mattson distracts yet again, contending that the Court should be "wary" of Applied's arguments because they are somehow "contradicted" by Applied's alleged failure to disclose certain *publications* to the USPTO during its own patent prosecution.  Opp 12-13.  This argument is irrelevant and incorrect.  The duty to disclose applies to pending *claims*.  *See* 37 C.F.R. § 1.56(a).  The only Applied claims that Mattson alleges disclosed a trade secret are the then-pending application claims 1, 4, and 6 of the '017 Publication.  FAC ¶ 64.  But Mattson concedes Applied *did* submit Mattson '206 to the USPTO (Opp 12-13), and ***those claims were rejected by the USPTO in view of Mattson '206*** (RJN Ex. A) (*see* MTD 13-15).  The USPTO's rejection confirms both that Applied disclosed the relevant art and that Mattson had disclosed its alleged trade secrets.

**3.      Mattson Fails to Otherwise Allege the Scope of Its DTSA Claim**

Other than Mattson's allegations relating to aspects of the Green and Grey Path technology that were publicly disclosed, there is nothing left but vague, bare, and conclusory allegations that do not sufficiently identify any trade secret to support the DTSA claim.  In an attempt to plead around its prior publication, Mattson suggests the theoretical existence of additional but undefined technologies "associated with" and/or "related to" the Green and Grey path technologies.  *See, e.g.*, FAC ¶¶ 19, 25.

6

This attempt to expand the scope of its alleged trade secrets fails, however, because Mattson does not identify, either in the FAC or in its Opposition, any of those "associated" or "related" technologies or "concepts and features." Opp. 11 (accepting "[f]or the sake of argument" that "Mattson's trade secrets *were narrowly limited* to the enumerated 'Aspects' crafted by Applied"), 6 ("the FAC goes on to plausibly allege that the trade secrets encompass *additional concepts and features*") (emphases added).

Mattson's broad and open-ended pleading approach fails to meet the *Neutron Holdings, Inc. v. Hertz Corp.* standard on which it relies. 2023 WL 3919465, at *4 (N.D. Cal. June 8, 2023). *Neutron* requires that pleadings "go beyond 'catchall phrases'" and mere identification of "categories." *Id.*; *see also InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020) ("plaintiff 'must do more than just identify a kind of technology'"). Mattson's pleading that all information "associated with" and "related to" the "proprietary" Green and Grey Path technology for "use with Mattson's plasma processing tools" (which Applied cannot access) is insufficient to give notice to Applied and the Court. FAC ¶¶ 17-19, 25. Such vague allegations do not "allow a court to 'control the scope of subsequent discovery.'" *IQE plc v. Newport Fab, LLC*, 2022 WL 6615775, at *3 (C.D. Cal. Sept. 28, 2022). Mattson argues any further specificity would "raise[] the risk of . . . publicly disclos[ing] [its] trade secrets" (Opp. 7), but fails to explain why it could not identify its trade secrets without disclosing them (as other plaintiffs have done), or redact its pleading.

Finally, Mattson must meet a "more exacting level of particularity" because *its own publications* describe the alleged trade secrets; a requirement it has ignored. *Perlan Therapeutics, Inc. v. Superior Ct.*, 178 Cal. App. 4th 1333, 1346 (2009); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1146 (N.D. Cal. 2019) (plaintiff must "delineate the boundaries between its trade secrets and its information that has been made public through patents and patent applications"). In other words, even if not *all* of the purported trade secrets were disclosed (they were), Mattson concedes it disclosed *some* aspects (FAC ¶ 21) and must specifically allege which aspects it claims are *un*disclosed.

## B.    Mattson Fails to Allege Misappropriation by Applied

Applied demonstrated that the DTSA claim *against Applied* also fails because Mattson has not alleged that Applied "knew or had reason to know" that Mattson's trade secrets were improperly acquired, disclosed, or used. MTD 16-18. Mattson offers a halfhearted response on "knowledge"

(citing no authority and failing to address any of Applied's cases), and also focuses on a new theory—vicarious liability—that is not alleged in the FAC.  Both arguments fail.

### 1. Mattson Fails to Sufficiently Allege Applied "Knew or Should Have Known" It Was Acquiring, Using, or Disclosing Mattson's Purported Trade Secrets

Applied demonstrated in its MTD that each of the three theories of knowledge by Applied were unsupported.  *See* MTD 16:16-22.  In response, Mattson does not dispute that the first two theories (pattern of disclosure; recruiting of other employees) fail; rather, it argues only that Applied hiring two employees who previously worked together at Mattson leads to an "inference that Applied knew, or at least should have known, that it was misappropriating Mattson's trade secrets."  Opp. 14.  Mattson alleges *no facts* to support this rank speculation.  It does not respond to Applied's cited cases rejecting this theory, which is contrary to the public policy of this State and as expressed in the DTSA.  *See* MTD 17-18 (collecting authority); *Cisco Sys., Inc. v. Chung*, 2023 WL 2622155, at *6 (N.D. Cal. Mar. 22, 2023), *appeal dismissed*, 2023 WL 7179472 (9th Cir. Aug. 25, 2023) (rejecting similar theory that "would run counter to the strong public policy in California favoring employee mobility") (cleaned up); *see also* 18 U.S.C. § 1836(b)(3)(A)(i) (injunction may not be based "merely on the information the person knows").  The Court should follow Applied's unrebutted authority in rejecting Mattson's pleaded theories of knowledge.

### 2. Mattson's Vicarious Liability Argument Fails

Mattson also argues that Applied is liable for misappropriation under a vicarious liability theory.  This argument fails.  For one, because Mattson failed to sufficiently allege a trade secret (*supra* II.A), its vicarious liability theory fails as well.  Moreover, Mattson has not alleged *facts* to support this theory.  *Citcon USA, LLC v. Miao*, 2021 WL 3402783, at *4 (N.D. Cal. Aug. 4, 2021) (dismissing trade secret misappropriation theory based on *respondeat superior* because plaintiff failed to plead "the elements of a vicarious liability claim, or [] the facts necessary to support it"); *Masimo*, 2021 WL 8892168, at *5 (same).  To plead a vicarious liability theory based on *respondeat superior*, Mattson must allege facts showing that the misappropriation was done within the scope of the Individual Defendants' employment *and* that the misappropriation was either "required by or incident to their duties, or could reasonably be foreseen by the employer in any event."  *U.S. Legal Support, Inc. v.*

*Hofioni*, 2013 WL 6844756, at *7 (E.D. Cal. Dec. 20, 2013) (dismissing claim for failure to allege such facts).  In its Opposition, Mattson focuses only on allegations relating to the "within the scope of the employment" aspect.  *See* Opp. 15-16.  It alleges no facts showing that the purported misappropriation (i) was required by or incident to the Individual Defendants' duties at Applied, or (ii) could have reasonably been foreseen.  The bare allegations here stand in stark contrast to the cases Mattson cites. *See, e.g.*, *Navigation Holdings, LLC v. Molavi*, 2020 WL 5074307 (N.D. Cal. Aug. 25, 2020) (vicarious liability against defendant for the actions of its *CEO*, where defendant specifically recruited CEO to bring customer list to undercut plaintiff).

At bottom, Mattson's theory is one of inevitable disclosure:  that because the Individual Defendants performed similar work at Mattson and Applied (and inherent to that, had access to Mattson's trade secrets while working there), Applied should have known that there would necessarily be misappropriation.  But imposing vicarious liability under such a theory would directly conflict with California's rejection of the inevitable disclosure doctrine and would chill employee mobility.  *See U.S. Legal Support*, 2013 WL 6844756, at *7 n.8 (recognizing conflict between *respondeat superior* in misappropriation claim against new employer and inevitable disclosure doctrine).  Thus, even if Mattson's vicarious liability theory were added to the complaint, it is meritless and would not save Mattson's DTSA claim against Applied.

## C.     The Remaining State-Law Claims Are Superseded by CUTSA

Mattson's five state-law claims are preempted by CUTSA because the gravamen of each claim is that Applied disclosed Mattson's trade secrets in patent applications.  MTD 18-20.  Mattson does not address any of Applied's cited authority and does not dispute much of Applied's argument.  For instance, Mattson does not dispute that, even though it dropped its CUTSA claim, the state-law claims are still subject to CUTSA preemption.  *Id.* at 18-19 (collecting authority).  Nor does Mattson dispute that, after it dropped its CUTSA claim, it retained "state-law claims based on the same facts."  *Id.* at 20.  Nor could it, because the state-law claims expressly allege they are premised on "misappropriating trade secrets," "use of Mattson's trade secrets," "disclosing Mattson's trade secret information," and "improper taking of Mattson's trade secrets."  *Id.*  Mattson does not dispute that, for each state-law claim, the alleged *harm* to Mattson is the claimed disclosure of trade secrets.  *Id.*

9

Instead, Mattson raises two meritless arguments. *First*, Mattson argues that the state-law claims are "separate and distinct" from any trade secret claim because they are also premised on the Individuals Defendants' breach of their contractual obligations "to assign rights in any trade secrets or patentable inventions to Mattson." Opp. 16-17. But courts have "expressly rejected" the notion that "a common law cause of action can be based on the same nucleus of facts as [a] trade secrets claim, so long as it alleges new facts, different injuries and damages, or a different theory of liability." *Qiang Wang v. Palo Alto Networks, Inc.*, 2013 WL 415615, at *4 (N.D. Cal. Jan. 31, 2013). In particular, courts have rejected attempts to plead around CUTSA preemption by alleging breach of an employment contract, and Mattson cites no authority to the contrary. *E.g.*, *3D Sys., Inc. v. Wynne*, 2024 WL 1099677, at *6 (S.D. Cal. Mar. 12, 2024) ("And when confidentiality agreements are interfered with for the sole purpose of gaining access to secrets, courts find those claims superseded as well."). For instance, in *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, the plaintiff argued its tortious interference claim was not preempted because it was premised on the defendant causing an employee to breach his employment agreements with the plaintiff, as a means to "use, take, or disclose" the trade secrets and confidential information. 2021 WL 3042616, at *4 (N.D. Cal. July 19, 2021). The court found the interference claim preempted because "'stripped of facts supporting trade secret misappropriation,' the remaining allegations do not constitute any independent injury." *Id.* Likewise, here, absent the alleged misappropriation, there would be no claim or independent injury to Mattson. Thus, Mattson's argument is a "transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as something else." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 240 (2010), *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). Indeed, even *within* its opposition brief, Mattson overtly argues that its state-law claims are premised on trade secret misappropriation. *See, e.g.*, Opp. 19 (interference occurred "when [defendants] misappropriated Mattson's trade secrets").

*Second*, Mattson argues preemption does not apply here because Applied contends the trade secrets do not qualify as such (Opp. 17-18), citing an outdated case (*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. Co.*, 2009 WL 10709716 (N.D. Cal. Nov. 13, 2009) (*Applied II*)), which held that "it was premature to find that a claim was preempted by CUTSA before a finding was

made that the confidential information was a trade secret." *Id.* at *2. But that is no longer the law. Rather, as this Court recently held, "CUTSA preempts a plaintiff's claims based on misappropriation of information that does not qualify as a trade secret." *Sylabs*, 2023 WL 8813517, at *9 (collecting authority); MTD 18-19 (collecting authority, none of which Mattson addresses); *Elite Semiconductor*, 2021 WL 3042616, at *3 (noting that the "handful of decisions" holding otherwise were "either decided before the California Court of Appeals' *Silvaco* decision or failed to consider *Silvaco* entirely").

## D. The State-Law Claims Fail to State a Claim

**Induced Breach.** Mattson does not dispute that in order to allege an induced breach claim, it must allege *actions* by Applied that were *designed* to induce, and did induce, a breach of the Individual Defendants' employment contracts. MTD 20-21. Instead, Mattson argues that the bare allegations that Applied "had a patent incentive program" and had the Individual Defendants sign assignment agreements when they joined Applied (just as they did when they joined Mattson) is sufficient to state a claim. Opp. 19. But Mattson alleges no facts showing actions by Applied that were designed to induce and did induce a breach. Therefore, its empty pleading cannot survive a motion to dismiss. *See Urica, Inc. v. Medline Indus., Inc.*, 2011 WL 13128408, at *7 (C.D. Cal. Oct. 5, 2011) ("[Plaintiff] does not identify or describe the inducements Medline offered nor how or why they caused Pharmaplast to breach the contract. Nor does it allege facts suggesting that Medline's conduct was intentional. As a result, the allegation is conclusory and deficient."). Mattson cites no authority to the contrary.

In an attempt to salvage this claim, Mattson vaguely argues it "may also be sustained against Applied under a theory of vicarious liability." Opp. 20. This makes no sense. Applied cannot be held vicariously liable for the conduct of the Individual Defendants on an *induced breach of contract* claim because there would be no inducement to be held liable *for*, since the Individual Defendants cannot induce themselves to breach their own contract. Mattson cites no authority for this theory. Instead, it cites *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n.*, 298 F.3d 768 (9th Cir. 2002), a RICO case that did not involve an induced breach claim. Mattson also cites *Applied Materials v. Advanced Micro-Fabrication Equip., Inc.*, 2008 WL 11398913, at *2 (N.D. Cal. Feb. 29, 2008) (*Applied I*), but that case did not involve an induced breach claim *or* vicarious liability. The passage Mattson quotes addresses whether the court could exercise personal jurisdiction over a Chinese corporation due to the

actions of its founders.  *Id.*  This theory also fails because it was not pleaded.  *See supra* II.B.1.

**Conversion**.  Mattson's conversion claim fails because conversion does not apply to *intangible* property (MTD 21), as explained in *Elite Semiconductor*, 2021 WL 3042616, at *5 ("Conversion traditionally required a taking of tangible property and thus was not available to remedy misappropriation of something like a trade secret.") (cleaned up).  Mattson attempts to distinguish *Elite Semiconductor* by arguing it involved "patent invention *disclosure documents*" whereas "Mattson's conversion claim relates to the patents themselves."  Opp. 20-21.  But that misses the point; a "patent filing" is not subject to a conversion claim because the filing "is not in and of itself personal property or chattel."  *Beckmann v. Synertech P/M, Inc.*, 2011 WL 13355951, at *3 (C.D. Cal. Dec. 1, 2011).  Mattson cites two outdated cases (*Applied I* and *Applied II*), neither of which even analyzed the issue of whether intangible property can form the basis for a conversion claim.  Rather, both cases addressed only CUTSA *preemption* of conversion claims, and as discussed (*supra* II.C) they are no longer good law.  In addition, as Applied explained (MTD 21), "violation of contractual" obligations (*see* Opp. 20) cannot form the basis of a conversion claim, an argument to which Mattson does not respond.

**Unfair Competition**.  As set forth in Applied's MTD, all three prongs of the UCL claim fail.  *First*, Mattson does not dispute that if the above claims fail, the unlawful prong also fails.  *Second*, Mattson does not dispute that it failed to allege the "unfair" prong, so at the very least, this portion of the UCL claim should be dismissed.  *See* MTD 22.  *Third*, citing no case law or paragraphs in the FAC, Mattson argues the filing of the patent application was likely to deceive the public, supporting the UCL's fraud prong.  Opp. 21.  Mattson cites an inapposite federal regulation stating that patents are by their nature a matter of public interest.  *Id.*  But it does not allege facts (let alone facts pleaded with particularity, as required) showing that members of the public are likely to be deceived by Applied's filing of the patent application.  *See Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *13 (N.D. Cal. May 6, 2021) (van Keulen, J.).

**Intentional and Negligent Interference with Prospective Economic Relations**.  Mattson's intentional and negligent interference with prospective economic relations claims fail because Mattson does not sufficiently plead an independently wrongful act.  *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 581-82 (N.D. Cal. 1999).  Mattson responds that the independently wrongful act is the

same conduct as that underlying its DTSA claim, namely, that "Applied filed fraudulent invention assignment agreements with the USPTO and directed the Individual Defendants to execute and file assignment agreements contrary to their contractual assignment obligations based on patentable inventions developed during their time as Mattson employees." Opp. 18. As an initial matter, the fact that Mattson is trying to use the conduct underlying the DTSA claim as the wrongful act supporting its interference claims proves that those claims are preempted by CUTSA. *Supra* II.C. Mattson cites one case in support, which did not involve CUTSA preemption, and which *granted* the motion to dismiss the interference claims. *IQE*, 2022 WL 6615775, at *5. It does not help Mattson here.

The intentional interference claim fails for the independent reason that Mattson did not allege that Applied acted with an intent designed to disrupt Mattson's economic relations. MTD 23. Mattson cites FAC paragraphs 100 and 101 in response, but those merely allege as a general matter that Applied "knew of the economic benefit to Mattson of its ownership interest in the proprietary information and inventions developed by its employees." They say nothing about an intent designed to disrupt Mattson's economic relations, let alone which relationships were disrupted.

The negligent interference claim also fails because Mattson does not allege a duty of care *Applied* owed to Mattson. Mattson does not dispute this. Instead, Mattson contends that the *Individual Defendants* owed a duty to Mattson, they breached that duty "when they misappropriated Mattson's trade secrets," and that breach is imputed to Applied through a theory of vicarious liability. Opp. 19. Again, this new theory demonstrates that the claim is preempted, given that Mattson *concedes* the basis of this claim is the alleged misappropriation. Indeed, the one case Mattson cites, *Neutron Holdings*, 2023 WL 3919465, did not involve a CUTSA preemption argument (otherwise the claims there likely would have been preempted). Moreover, *Neutron* is completely inapposite. Here, Applied is alleged to have interfered with Mattson's relationships *with* the Individual Defendants. *See* FAC ¶ 106. Applied of course cannot be held vicariously liable for the Individual Defendants' actions in interfering with their *own* relationships with Mattson. By contrast, the employee in *Neutron* interfered with his former employer's customer relationships (by launching an app to compete with plaintiff) and employee relationships (by recruiting additional employees). 2023 WL 3919465, at *2. There are no such factual allegations here, which is yet another reason this claim fails.

**E.     The State-Law Claims Should Be Stricken Under the Anti-SLAPP Statute**

Mattson's state-law claims should also be stricken pursuant to the two-step inquiry under the anti-SLAPP statute.  *See* MTD 23-24.  On the first step, Mattson does not dispute that the filing of a patent application is a protected act; rather, Mattson contends its claims do not *arise from* that protected act.  This argument fails because, as the Ninth Circuit has held, "[e]ach of [Mattson's] causes of action arises not out of a general breach of duty, but out of [Defendants'] act of filing the [patent] application in [Applied's] name.  The [patent] application was not 'incidental' to the causes of action, . . . but was their gravamen. . . . But for the [patent] application, [Mattson] would have no reason to sue [Applied]."  *Mindys Cosms, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010).  Indeed, with respect to each of the state-law claims, Mattson alleges the wrongful conduct that caused it harm was the filing of the patent application.  *See* FAC ¶¶ 96, 102, 108, 113, 117, 119.  Thus, the anti-SLAPP statute clearly applies.[1]I

On the second step, Applied set forth the correct standard for anti-SLAPP motions in federal court (Rule 12(b)(6)) (*see* MTD 23:27-24:2), which Mattson does not dispute.  Because the claims are preempted and otherwise fail, Mattson cannot demonstrate a probability of success.

**F.     Mattson's Request for Punitive Damages Should Be Stricken**

Mattson does not dispute that the only basis for its punitive damages request is the intentional interference claim (*see* MTD 24), and that if the interference claim is dismissed, it is proper to strike the punitive damages request (*id.*).  Thus, because the intentional interference claim merits dismissal (*supra* II.C-D), the request for punitive damages should be stricken.

Nor does Mattson dispute that if it fails to allege *factual allegations* of malice, oppression, or fraud, the request should be stricken.  *See* MTD 24-25.  Mattson does not respond to any of Applied's cited authority, and cites no authority of its own.  *See* Opp. 23-24.  Rather, Mattson contends it has alleged sufficient facts, citing just two paragraphs of the FAC.  First, Mattson cites paragraph 104, but this paragraph is entirely conclusory and contains no factual allegations at all.  *See* MTD 24.  Second, Mattson cites paragraph 65, which alleges the Individual Defendants—not Applied— breached their

---

[1] Mattson ignores the Ninth Circuit's on-point *Mindys* decision, and instead relies on *IQE*, 2022 WL 6615775, at *5 and *Sieler v. Atieva Inc.*, 2022 WL 18402494, at *7 (N.D. Cal. Dec. 16, 2022) (which in turn relied on *IQE*), for the proposition that the gravamen of the claims is not the filing of the application, but rather the misrepresentation within the application.  *IQE* is currently on interlocutory appeal on this very point.  *See* 2023 WL 10946752, at *2 (9th Cir. Oct. 30, 2023).

employment contracts with Mattson by executing "contrary assignment agreements to Applied of the rights in the Disclosing Patent Applications, including the application that published as the '017 Publication." This paragraph fails to support a request for punitive damages: (i) it alleges no conduct *by Applied* (let alone that Applied engaged in such conduct with malice, oppression, or fraud); (ii) "[p]unitive damages are not recoverable for breach of contract" in any event (*Flores v. Wells Fargo Bank, N.A.*, 2012 WL 2427227, at *9 (N.D. Cal. June 26, 2012)); and (iii) the filing of the patent application is the premise of the trade secret claim, and is therefore superseded. *See supra* II.C.

The Court should reject Mattson's attempt to tack on a request for punitive damages in its FAC (they were not requested in the original complaint) with no facts alleged to support it. *See Career Sys. Dev. Corp. v. Am. Home Assurance Co.*, 2010 WL 11636254, at *2 (N.D. Cal. Aug. 11, 2010) (striking conclusory punitive damages allegations similar to those alleged here); *Winding v. NDEX W., LLC*, 543 F. App'x 683, 684 (9th Cir. 2013). Mattson does not even request leave to amend its punitive damages request (*see* Opp. 24), let alone offer facts or argument for why leave should be granted.

**G.    Mattson Should Not Be Given Leave to Amend**

Mattson argues that if the Court "were to find that Mattson insufficiently pleaded either its misappropriation or any of the state-law claims, the Court should provide Mattson with an opportunity to amend." Opp. 24. But Mattson has not revealed a single fact that it would allege in a second amended complaint if granted leave. Courts regularly deny leave to amend where, as here, the plaintiff has already had an opportunity to amend in response to a motion to dismiss, and has offered no facts or arguments indicating leave to amend will be productive. *See Brislane v. Brown*, 2017 WL 528488, at *2 (C.D. Cal. Feb. 8, 2017). Denial with prejudice is also appropriate where, as here, "the fatal deficiencies cannot plausibly be remedied by further pleading." *Hernandez v. Container Store, Inc.*, 2024 WL 72657, at *3 (C.D. Cal. Jan. 3, 2024); *In Def. of Animals v. Sanderson Farms, Inc.*, 2021 WL 4243391, at *7 (N.D. Cal. Sept. 17, 2021) ("amendment . . . would be futile because of preclusion"). Courts regularly dismiss *with prejudice* claims preempted by CUTSA. *Peralta v. Cal. Franchise Tax Bd.*, 124 F. Supp. 3d 993, 1002 (N.D. Cal. 2015).

**III.    CONCLUSION**

The FAC should be dismissed with prejudice and the motion to strike should be granted.

1

2

DATED:  April 29, 2024                    By:    _____/s/ L. Kieran Kieckhefer_____

3                                          **GIBSON, DUNN & CRUTCHER**

4                                          L. Kieran Kieckhefer
                                           Y. Ernest Hsin
5                                          Stuart M. Rosenberg
                                           Joseph A. Gorman
6                                          Lauren Dansey
                                           Christina E. Myrold
7
                                           **JAMES POOLEY PLC**
8                                          James Pooley

9                                          *Attorneys for Defendant APPLIED*
10                                         *MATERIALS, INC.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLIED'S REPLY IN SUPPORT OF MOTION TO DISMISS & MOTION TO STRIKE MATTSON'S FAC
CASE NO. 5:23-CV-06071-SVK

**CERTIFICATE OF SERVICE**

I, Patricia Belloso, certify that on April 29, 2024, the foregoing **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE** was filed with the Clerk of the Court via CM/ECF.  Notice of this filing will be sent electronically to all registered parties by operation of the Court's electronic filing systems.

DATED:  April 29, 2024                                         By:  _____*/s/  Patricia Belloso*____
                                                                              Patricia Belloso