UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTSON TECHNOLOGY, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>APPLIED MATERIALS, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-06071-SVK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND STRIKE WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 56, 59, 87 |

    The Parties recite a familiar refrain in the world of trade secrets: a company hires away employees from a competitor, and those employees allegedly use the secret knowledge they obtained from their former employer to the benefit of their new employer. As alleged here, Defendants Rene George and Vladimir Nagorny worked on semiconductor technology as employees of Plaintiff Mattson Technology, Inc. ("Mattson"). Defendant Applied Materials, Inc. ("Applied"), another player in the semiconductor industry, subsequently hired Defendants George and Nagorny and then submitted patent applications based on the trade secrets that the two developed while at Mattson. Mattson brings this action to recover for Applied's trade-secret misappropriation and other alleged violations of law.

    Defendants now move to dismiss and strike. *See* Dkts. 56, 59, 87 (collectively, the "Motions"). The Parties appeared before the Court for a hearing on the Motions on June 4, 2024. *See* Dkt. 100 ("Hr'g Tr."). All Parties have consented to the jurisdiction of a magistrate judge. *See* Dkts. 12, 28, 39, 83. After considering the Parties' briefing, relevant law and the record in this action, after hearing oral argument and for the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motions **WITH LEAVE TO AMEND**.

///

///

## I. BACKGROUND

The following discussion of background facts is based on the allegations contained in the first amended complaint (the "FAC" at Dkt. 45), the truth of which the Court accepts for purposes of resolving the Motions. *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022). "Mattson designs, manufactures[ and] markets" technology in the semiconductor industry. *See* FAC ¶ 10. Between 2011 and 2012, it developed two "proprietary approaches" to the development of "plasma processing equipment," known as the "Green Path" and "Grey Path." *See id.* ¶ 17. The Green Path involves "the use of magnetic field concentrators in conjunction with a remote plasma source" in connection with "increas[ing the] efficiency of plasma generation at the bottom of the source and significantly increas[ing] the radial control near the substrate." *See id.* ¶ 20. The Grey Path, in turn, involves "adjust[ing] the position of [a] gas insert relative to [an] induction coil in [a] plasma source . . . to provide control of the source efficiency for a plasma process." *See id.* ¶ 21.

Mattson never disclosed these approaches in patent filings. *See id.* ¶¶ 25-30. It also implemented several safeguards to ensure they remained confidential: (1) disclosure of information on a need-to-know basis; (2) execution of agreements containing confidentiality provisions with both employees and third parties (*e.g.*, vendors, customers); (3) mandatory review and acknowledgment of confidentiality obligations upon employees' departure from the company; (4) use of passwords and encryption to restrict access to electronically stored data; and (5) restriction of physical "access to spaces where trade secret designs are developed, tested, and kept." *See id.* ¶¶ 32-38.

Defendants George and Nagorny helped develop the Green Path and Grey Path approaches while employed at Mattson. *See id.* ¶ 17. They both signed agreements containing confidentiality provisions, and, upon leaving the company, acknowledged that those obligations continued. *See id.* ¶¶ 41, 43, 46, 48-49. They also entered into agreements that assigned to Mattson their rights to any inventions that they developed while at Mattson. *See id.* ¶¶ 42, 47. Applied, one of Mattson's competitors in the semiconductor industry, ultimately hired away both employees (Defendant George in 2015 and Defendant Nagorny in 2017). *See id.* ¶¶ 13, 50. It subsequently filed multiple patent applications that publicly disclosed aspects of Mattson's formerly confidential Green Path

1  and Grey Path approaches.  *See id.* ¶¶ 53-64.  Mattson now seeks to recover for this alleged trade-
2  secret misappropriation.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This facial-plausibility standard requires a plaintiff to allege facts resulting in "more than a sheer possibility that a defendant has acted unlawfully."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice."  *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted).  A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their favor.  *See Boquist*, 32 F.4th at 773.  However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

If a court grants a motion to dismiss, it may exercise discretion to grant or deny leave to amend the complaint, and it "acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith."  *See Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 383 (9th Cir. 2020) (citation omitted).

///
///
///
///
///
///

### III. DISCUSSION

Mattson asserts seven causes of action in the FAC, all of which stem from Defendants' alleged theft of its intellectual property:

- Violation of the Defend Trade Secrets Act (the "DTSA") (asserted against all Defendants).
- Breach of contract (asserted against Defendants George and Nagorny).
- Inducing breach of written contract ("IBC") (asserted against Applied).
- Intentional interference with prospective economic relations ("IIPER") (asserted against Applied).
- Negligent interference with prospective economic relations ("NIPER") (asserted against Applied).
- Violation of the California Unfair Competition Law (the "UCL") (asserted against all Defendants).
- Conversion (asserted against all Defendants).

As discussed below, the DTSA and breach-of-contract claims survive scrutiny under Rule 12(b)(6); the remaining claims do not. Applied also requests that the Court strike Mattson's state-law claims and request for punitive damages, but, as discussed below, the Court declines to do so.

### A. Mattson Sufficiently States A DTSA Claim

"To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020) (citation omitted). Defendants argue that Mattson does not sufficiently allege either (1) entitlement to trade-secret protection for the Green Path and Grey Path approaches or (2) that Defendants George and Nagorny's alleged misappropriation can result in vicarious liability for Applied.[1] The Court disagrees.

///

---

[1] Defendants George and Nagorny expressly adopt Applied's arguments in seeking dismissal of the DTSA claim. *See* Dkts. 59 at 2, 87 at 4.

### 1. Mattson Sufficiently Alleges That The Green Path And Grey Path Approaches Constitute Protectable Trade Secrets

"[T]he definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *Id.* at 657 (citations omitted). The Court reads the Motions as attacking each of these elements. Mattson's allegations, however, suffice.

#### a. Mattson Identifies Its Trade Secrets With Sufficient Particularity

"[W]hat may be considered a 'trade secret' is broad." *Id.* (citation omitted). This breadth, however, is not unlimited; information described in generalities does not qualify for trade-secret protection. *See id.* at 658. Rather, a plaintiff must offer "sufficient particularity to separate [its purported trade secrets] from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *See id.* (emphasis and citation omitted). In doing so, however, "a plaintiff need not spell out the details of the trade secret, but must minimally provide reasonable notice of the issues which must be at the time of trial and . . . provide reasonable guidance in ascertaining the scope of appropriate discovery." *Sylabs, Inc. v. Rose*, No. 23-cv-00849-SVK, 2023 WL 8813517, at *5 (N.D. Cal. Dec. 19, 2023) (quotation marks and citation omitted). Mattson provides such reasonable notice and guidance in the FAC, as it describes with particularity the information encompassed by its Green Path and Grey Path approaches. *See* FAC ¶¶ 17-21; *see also id.* ¶¶ 25-30 (describing aspects of Green Path and Grey Path approaches not disclosed in Mattson's patent filings).

Defendants argue that Mattson nevertheless does not comply with the sufficient-particularity requirement for identifying trade secrets, because it "alleges a list of vague and overbroad general categories of trade secrets" and relies on "broad and open-ended language like 'including but not limited to' and 'includes at least,'" in describing its purported trade secrets. *See* Dkt. 56 at 6. But use of such "hedging language" does not render otherwise sufficiently described information a non-trade secret. *See InteliClear*, 978 F.3d at 659. Further, to the extent Mattson tacks hedging language onto its particularized descriptions of its trade secrets, it confirmed at the June 4 hearing that, in doing so, it did not intend to capture any information outside the umbrellas of the Green Path and Grey Path approaches. *See* Hr'g Tr. At 16:19-17:2. Using broad language

5

1    in this way does not defeat a DTSA claim.  *See, e.g.*, *Neutron Holdings, Inc. v. Hertz Corp.*, No.
2    23-cv-00934-JSC, 2023 WL 3919465, at *4 (N.D. Cal. June 8, 2023) (declining to dismiss DTSA
3    claim where plaintiff "provides enough detail to go beyond 'catchall phrases[]'" and uses "non-
4    exhaustive wording" in connection with sufficiently defined trade secret).

5       Defendants offer two other reasons why Mattson has not sufficiently described the trade
6    secrets at issue, and the Court rejects both.

7       ***First***, Defendants argue that Mattson does not expressly allege that some of the described
8    information constitutes a trade secret.  *See* Dkt. 56 at 6-7 (citing FAC ¶¶ 26-30).  The Court
9    disagrees because Mattson included the allegations in question in a section titled "**Mattson Does**
10   **Not Publicly Disclose Its <u>Trade Secrets</u>**."  *See* FAC at 8-12 (underlined emphasis added).
11   Further, the allegations in question clearly concern information that Mattson elsewhere expressly
12   describes as its trade secrets.  *Compare, e.g.*, *id.* ¶ 26 (one of Mattson's patent filings did not
13   disclose use of magnetic field concentrators to increase efficiency), *with id.* ¶ 20 (Green Path
14   approach described as "trade secret information" that involves "use of magnetic field
15   concentrators" to "increase[] efficiency").

16      ***Second***, Defendants argue that "Mattson's misappropriation allegations go well beyond,
17   and are untethered to, these Aspects [at FAC ¶¶ 26-30] that Mattson claims not to have included in
18   its patent filings[.]"  Dkt. 56 at 7 (citing FAC ¶¶ 59, 63-64).  But the "Aspects" of Mattson's trade
19   secrets described in paragraphs 26 through 30 of the FAC do not constitute the sole descriptions of
20   Mattson's purported trade secrets; Mattson elsewhere describes in particularized detail its Green
21   Path and Grey Path approaches, and the "misappropriation allegations" in question (*see* FAC ¶¶
22   59, 63-64) fall within the rubric of these sufficiently described Green Path and Grey Path
23   approaches.  *Compare, e.g.*, *id.* ¶ 59 (one of Applied's patent filings discloses use of magnetic
24   field concentrator to increase efficiency), *with id.* ¶ 20 (Green Path approach involves "use of
25   magnetic field concentrators" to "increase[] efficiency").

26   ///
27   ///
28   ///

6

### b. Mattson Sufficiently Alleges That It Did Not Publicly Disclose Its Trade Secrets

Mattson expressly alleges (in detail) that it has not, in its patent filings or elsewhere, publicly disclosed the Green Path and Grey Path approaches. *See id.* ¶¶ 19, 25-30. The Court must accept these non-conclusory allegations. Defendants counter that Mattson disclosed its purported trade secrets in its patent filings. *See* Dkt. 56 at 7-15. In raising this argument, Defendants create a factual dispute which they invite the Court to resolve by delving into a highly technical analysis of Mattson's patent filings. The Court declines to do so at the pleading stage and without the benefit of expert discovery. *See AllRounds, Inc. v. Eshares, Inc.*, No. 20-cv-07083-VC, 2021 WL 2945532, at *1 (N.D. Cal. July 14, 2021) ("The question whether alleged trade secrets are disclosed in a patent application . . . may be beyond the scope of a motion to dismiss when there are factual disputes about the extent of the disclosure or what is encompassed by the claimed secrets." (citation omitted)); *see, e.g.*, *XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*, No. 21-cv-00105-BEN, 2022 WL 801743, at *20 (S.D. Cal. Mar. 15, 2022) ("To definitively determine whether the alleged trade secrets were previously public, the Court would need to engage in an in-depth analysis of these highly technical documents and resolve factual disputes between the parties [at the pleading stage]. . . . [T]he Court declines to resolve these fact-specific arguments." (citations omitted)); *MACOM Tech. Sols. Inc. v. Litrinium, Inc.*, No. 19-cv-00220-JVS, 2019 WL 4282906, at *7 (C.D. Cal. June 3, 2019) ("[T]he Court will not undertake a summary judgment-like review of the patents at issue in comparison to the alleged trade secret information to determine whether information has been made public, particularly at the pleading stage where all inferences are to be drawn in Plaintiffs' favor."); *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, No. 17-cv-00808-DAD, 2018 WL 2463869, at *6 (E.D. Cal. June 1, 2018) ("The court concludes that the issue of whether all of plaintiffs' alleged trade secrets have been publicly disclosed is a factual issue which is properly the subject of discovery. . . . In arguing that plaintiffs have not affirmatively distinguished their alleged trade secrets from public information, defendants effectively ask the court to conduct a review of the evidence to determine whether plaintiffs' trade secrets have been made public. This sort of review is more appropriate on a motion for summary judgment." (citations omitted)).

7

Defendants attempt to bolster their position with citations to several decisions in which courts declined to recognize trade-secret status over previously disclosed information. *See* Dkt. 56 at 8. But all but one of those cases involved non-technical trade secrets whose public disclosure a court could adequately evaluate without engaging in a complex factual analysis. *See Strategic Partners, Inc. v. Vestagen Protective Techs., Inc.*, 777 F. App'x 224, 225 (9th Cir. 2019) (trade-secret protection asserted over "business strategy"); *Veronica Foods Co. v. Ecklin*, No. 16-cv-07223-JCS, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (trade-secret protection asserted over customer identities); *Kavanagh v. Tuller*, 16-cv-01937-H, 2017 WL 1496436, at *4 (S.D. Cal. Apr. 26, 2017) (trade-secret protection asserted over name of and process for using product); *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304-05 (1st Dist. Div. 4 2002) (trade-secret protection asserted over telemarketing scripts). The last decision cited by Defendants comes from the Court of Federal Claims (*see Ideal Innovations, Inc. v. United States*, 139 Fed. Cl. 737 (Fed. Cl. 2018)), a court where only judges, and not juries, decide questions of fact.[2] *See Crosby v. Kieger*, 146 Fed. Cl. 303, 304 n.3 (Fed. Cl. 2019). It therefore was particularly appropriate for the *Ideal* court to resolve at the pleading stage the factual issue of whether purported trade secrets had been previously disclosed in patent filings, and it did so after requesting supplemental briefing on the issue. *See Ideal*, 139 Fed. Cl. at 744-46. This Court does not reject the propriety of the *Ideal* court doing so and simply holds that it may appropriately defer engaging in such an analysis until a later stage of the case with the benefit of discovery.[3]

          c.    *Mattson Sufficiently Alleges That It Attempted To Maintain The Secrecy Of Its Trade Secrets*

Defendants argue that Mattson "alleges mere legal conclusions about maintaining secrecy

---

[2] Here, in contrast, the Parties have jointly requested a trial by jury. *See* Dkt. 76 at 8.

[3] Because the Court declines to compare Mattson's allegations to patent filings, it need not consider those filings in its analysis and therefore rejects Applied's request that the Court judicially notice those filings. *See* Dkt. 58; *cf. Kamath v. Itria Ventures, LLC*, No. 23-cv-05153-SVK, 2024 WL 590603, at *4 (N.D. Cal. Feb. 13, 2024) ("With respect to the UCC-3 Statement, however, the Court concludes that its resolution of the Motion would not change even if it considered that document in its analysis. The Court therefore declines to judicially notice that document or determine whether Plaintiff incorporated that document into the Complaint by reference." (citation omitted)).

8

over the purported trade secrets." See Dkt. 56 at 16. The Court disagrees because, as discussed above, Mattson describes in detail its efforts to maintain the secrecy of its purported trade secrets (*e.g.*, confidentiality agreements, data encryption). *See, e.g.*, *MBS Eng'g Inc. v. Black Hemp Box, LLC*, No. 20-cv-02825-JD, 2021 WL 2458370, at *2 (N.D. Cal. June 16, 2021) (allegations of, *inter alia*, non-disclosure agreements, password protection and disclosure on need-to-know basis sufficient); *Gatan, Inc. v. Nion Co.*, No. 15-cv-01862-PJH, 2017 WL 1196819, at *6 (N.D. Cal. Mar. 31, 2017) (similar).

### 2. The Court May Hold Applied Vicariously Liable For The Alleged Misappropriation of Defendants George And Nagorny

Applied argues that Mattson fails to allege facts sufficient to render it liable for the indirect misappropriation of its employees (Defendants George and Nagorny). See Dkt. 56 at 16-18. Mattson counters that it offers facts sufficient to allege a theory of vicarious liability. See Dkt. 62 at 15-16. The Court agrees with Mattson.

Under the doctrine of *respondeat superior*, "an employer may be held vicariously liable for torts committed by an employee within the scope of employment." *Presbyterian Camp & Conf. Ctrs., Inc. v. Superior Ct.*, 12 Cal. 5th 493, 502 (2021) (citations omitted). "In California, the scope of employment has been interpreted broadly under the respondeat superior doctrine." *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1004 (1995). But such breadth does not extend indefinitely; a "causal nexus" must exist between the employee's acts and their work. *See Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 297-98 (1995). Causal nexus remains an amorphous concept in California, and the

> California courts have not identified a single governing standard for identifying this causal nexus, but instead use a variety of different tests to describe the necessary connection between the tort and the employee's work: (1) the tort must be engendered by or arise from the work; (2) the incident leading to injury must be an outgrowth of the employment; (3) the risk of tortious injury must be inherent in the working environment or typical of or broadly incidental to the enterprise the employer has undertaken; or (4) the tort must be, in a general way, foreseeable from the employee's duties.

*Fitzgibbons v. Integrated Healthcare Holdings, Inc.*, No. G048413, 2015 WL 1954643, at *6 (Cal.

9

Ct. App. 4th Dist. Div. 3 Apr. 30, 2015) (quotation marks, brackets and citations omitted).

Applied hones in on the fourth, causal-nexus standard of foreseeability. *See* Dkt. 74 at 8-9. Mattson satisfies that standard as it was reasonably foreseeable to Applied that hiring away employees from a competitor could result in those employees (whether intentionally or inadvertently) misappropriating confidential information that they had obtained from their prior employer. Applied argues that the Court may not infer reasonable foreseeability of misappropriation from the mere fact that Defendants George and Nagorny left Mattson to go work for Applied, because doing so would effectively accept a theory of inevitable disclosure, a doctrine rejected by the California courts. *See id.* at 9; *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463-64 (4th Dist. Div. 3 2002); *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1277 (2d Dist. Div. 6 2009); *see also U.S. Legal Support, Inc. v. Hofioni*, No. 13-cv-01770-LKK, 2013 WL 6844756, at *7 n.8 (E.D. Cal. Dec. 20, 2013) (questioning reasonable foreseeability of future misappropriation based on employee departing to work for competitor in light of California courts' rejection of doctrine of inevitable disclosure).

Under the doctrine of inevitable disclosure, a court could accept an employee's inevitable disclosure of trade secrets as a substitute for proof of actual (or threatened) misappropriation in evaluating a request for entry of a preliminary injunction. *See Whyte*, 101 Cal. App. 4th at 1458; *Cent. Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 524-25 (5th Dist. 2008); *Friedman v. EyeLight, Inc.*, No. 22-56076, 2023 WL 8915417, at *2 n.3 (9th Cir. Dec. 27, 2023). California's rejection of the doctrine, therefore, does not implicate the reasonable foreseeability to Applied of Defendants George and Nagorny's alleged misappropriation for two reasons.

***First***, the reasonable foreseeability of the misappropriation does not serve as a substitute for proof. The Court simply accepts such reasonable foreseeability as sufficient to accept a theory of vicarious liability at the pleading stage.

***Second***, Mattson does not request entry of a preliminary injunction, and as the Ninth Circuit has recognized, California's rejection of the doctrine has little relevance outside that context. *See Friedman*, 2023 WL 8915417, at *2 n.3 ("California's rejection of the doctrine [of inevitable disclosure] is both factually and procedurally inapposite here, where EyeLight has

asserted actual use—not mere knowledge or 'inevitable' use—and is seeking monetary, not injunctive relief.").

* * *

In sum, the Court will not dismiss the DTSA claim, and Mattson sufficiently alleges that the Court may hold Applied vicariously liable for the alleged misappropriation of Defendants George and Nagorny.

### B.     Mattson Sufficiently States A Breach-Of-Contract Claim

Mattson alleges that Defendants George and Nagorny breached their agreements to retain the confidentiality of Mattson's trade secrets when they misappropriated the Green Path and Grey Path approaches. *See* FAC ¶¶ 82-90. In lieu of presenting an independent attack against the breach-of-contract claim, Defendants George and Nagorny argue only that this claim necessarily rises and falls with the DTSA claim and therefore fails along with Mattson's insufficiently pled DTSA claim. *See* Dkts. 59 at 3-4, 87 at 5-6. The Court rejects this argument for two reasons.

***First***, DTSA and breach-of-contract claims do not succeed or fail in tandem; the claims require satisfaction of distinct elements. Thus, a plaintiff may fail to state a DTSA claim but nevertheless succeed in stating a breach-of-contract claim. *See, e.g.*, *Whiteslate, LLP v. Dahlin*, No. 20-cv-01782-W, 2021 WL 2826088, at *6, *8 (S.D. Cal. July 7, 2021) (dismissing DTSA claim and declining to dismiss breach-of-contract claim based on same underlying misappropriation).

***Second***, even if the Court accepted the logic of Defendants George and Nagorny's argument, it would still not dismiss the breach-of-contract claim because, as discussed above, the DTSA claim survives the Motions.

The Court will therefore decline to dismiss the breach-of-contract claim.

///
///
///
///
///

11

### C. The California Uniform Trade Secrets Act Preempts Mattson's Remaining Claims

The California Uniform Trade Secrets Act (the "CUTSA") "provides the exclusive civil remedy for conduct falling within its terms <u>and supersedes other civil remedies based upon misappropriation of a trade secret</u>." *Sylabs*, 2023 WL 8813517, at *8 (emphasis added) (citations omitted); *see also ChromaDex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983, 989 (C.D. Cal. 2019) ("CUTSA serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information . . . ." (citations omitted)). The statute, therefore, preempts Mattson's remaining claims, all of which arise under state law and stem from Defendants' alleged misappropriation of the Green Path and Grey Path approaches.[4] *See, e.g.*, *Celgard, LLC v. Shenzhen Senior Tech. Material Co. Ltd. (US) Rsch. Inst.*, No. 19-cv-05784-JST, 2022 WL 20243403, at *3 (N.D. Cal. Apr. 25, 2022) (IBC claim preempted by the CUTSA); *Calsoft Labs, Inc. v. Panchumarthi*, No. 19-cv-04398-NC, 2020 WL 512123, at *6 (N.D. Cal. Jan. 31, 2020) (IIPER claim preempted by the CUTSA); *Marantz Bros., LLC v. Tate & Lyle Ingredients Ams. LLC*, No. 20-cv-00317-PSG, 2022 WL 17190270, at *16 (C.D. Cal. July 28, 2022) (NIPER claim preempted by the CUTSA); *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062-64 (N.D. Cal. 2017) (UCL claim preempted by the CUTSA); *MedioStream, Inc v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1116 (N.D. Cal. 2012) (conversion claim preempted by the CUTSA). This preemption applies even though Mattson does not pursue a claim under the CUTSA. *See, e.g.*, *Artec Grp., Inc. v. Klimov*, No. 15-cv-03449-EMC, 2016 WL 8223346, at *7 (N.D. Cal. Dec. 22, 2016); *Total Recall Techs. v. Luckey*, No. 15-cv-02281, 2016 WL 199796, at *7-8 (N.D. Cal. Jan. 16, 2016).

Mattson opposes CUTSA preemption on the basis that its remaining state-law claims arise from facts distinct from Defendants' misappropriation of its trade secrets. *See* Dkt. 62 at 16-18; *see also* Dkts. 61 at 5, 89 at 5-6. Yet its charging allegations in the FAC tell a different story—at bottom, every single one of the remaining state-law claims flows from Defendants' alleged

---

[4] The CUTSA does not preempt breach-of-contract claims, and Defendants do not argue otherwise. *See Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 704 (9th Cir. 2017).

misappropriation. *See* FAC ¶¶ 96 (harm under IBC claim stems from "inclusion of Mattson['s] trade secret information in the filing of a patent application"), 101 (Applied engaged in tort of IIPER by "misappropriating Mattson's trade secrets"), 107 (same for NIPER claim), 113 (UCL violation stems from using and disclosing Mattson's trade secrets), 120 (conversion claim based on "alleged conduct of the Defendants in the improper taking of Mattson's trade secrets and proprietary information, and subsequent use thereof").

At the June 4 hearing, Mattson attempted to distinguish between claims based on misappropriation of its trade secrets and claims based on misappropriation of other, non-trade-secret information that Defendants George and Nagorny obtained while employed by Mattson. *See* Hr'g Tr. at 39:2-41:11. But the "CUTSA serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information, <u>even if that information does not meet the statutory definition of a trade secret</u>." *ChromaDex*, 369 F. Supp. 3d at 989 (emphasis added) (citations omitted). Exceptions exist where

> (1) [Mattson] can allege facts that show that the [non-trade secret proprietary] information . . . was made property by some provision of positive law, . . . on grounds that are qualitatively different from the grounds upon which trade secrets are considered property, or (2) it can otherwise be concluded that [Mattson's] Non–Trade Secret Claims allege wrongdoing that is material[ly] distinct[ ] [from] the wrongdoing alleged in a [C]UTSA claim . . . .

*SunPower Corp. v. SolarCity Corp.*, No. 12-cv-00694-LHK, 2012 WL 6160472, at *9 (N.D. Cal. Dec. 11, 2012) (quotation marks and citations omitted). These exceptions do not apply, however, because (1) Mattson's rights in the non-trade-secret information clearly stem from the same "grounds upon which trade secrets are considered property" (*i.e.*, the information constitutes Mattson's valuable, non-public information), and (2) the alleged wrongdoing underlying its remaining state-law claims mirrors the alleged wrongdoing underlying its misappropriation claim (*i.e.*, Applied improperly used information that Defendants George and Nagorny obtained from Mattson).

To the extent that Mattson argues that it satisfies the positive-law exception through its

13

assignment agreements with Defendants George and Nagorny (*i.e.*, that those agreements create a property right in the non-trade-secret information at issue), Mattson does not sufficiently identify the non-trade-secret information covered. *See* Dkt. 62 at 16-17; Hr'g Tr. at 41:5-8. At the June 4 hearing, Mattson referenced only a "claim 1" within one of its patent filings (*see* FAC ¶ 64) as within the scope of the misappropriated non-trade-secret information (*see* Hr'g Tr. at 39:18-40:23), but that information appears to fall within the scope of the Green Path and Grey Path trade secrets, and Mattson does not explain how claim 1 is distinguishable. *Compare, e.g.*, FAC ¶ 64 (claim 1 concerns varying positions of induction coils around a plasma source), *with id.* ¶ 20 (Green Path approach involves "the use of induction coils at various heights around a remote plasma source"). Further, clarification provided during oral argument cannot overcome scrutiny under Rule 12(b)(6); a complaint must stand on its own in sufficiently notifying a defendant of the claims asserted against them, and Mattson does not clearly identify in the FAC the non-trade-secret information at issue.

In sum, the Court will dismiss Mattson's non-breach-of-contract state-law claims as preempted by the CUTSA. It will however, permit Mattson leave to amend these claims, as amendment may not be futile if Mattson can allege, in good faith and with sufficient detail, a basis for these claims distinct from trade-secret misappropriation and consistent with the Court's preemption analysis.

### D. The Court Will Not Strike Mattson's State-Law Claims Or Request For Punitive Damages

Applied requests that the Court strike Mattson's (1) state-law claims under the California anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute and (2) request for punitive damages as insufficiently pled.[5] *See* Dkt. 56 at 23-25. Because the Court will permit

---

[5] Although Applied does not clarify whether it seeks to strike all of Mattson's state-law claims or just those state-law claims asserted against it, Applied may not move to strike any claims not asserted against it. *Cf. Miles v. Cnty. of Alameda*, No. 22-cv-06707-WHO, 2023 WL 8853717, at *4 (N.D. Cal. Dec. 21, 2023) (defendants may not seek dismissal of claims not asserted against them); *Zhang v. Subaru of Am., Inc.*, No. 12-cv-00857-PJH, 2012 WL 1252713, at *2 (N.D. Cal. Apr. 13, 2012) (denying motion to dismiss certain claims "because the claims are not asserted against Suburu, and Suburu thus has no basis to seek dismissal").

Mattson an opportunity to amend its claims, it will deny the request to strike these claims without prejudice. *See, e.g.*, *Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 820 (N.D. Cal. Feb. 13, 2019) (denying anti-SLAPP motion to strike without prejudice where court dismisses claims with leave to amend). The Court will also deny as moot the request to strike Mattson's request for punitive damages because Mattson seeks punitive damages in connection with only its IIPER claim, and the Court will dismiss that claim. *See* FAC ¶ 104; *see, e.g.*, *9Global, Inc v. Avant Credit Corp.*, No. 15-cv-00898-WHA, 2015 WL 3832799, at *2, *5 (N.D. Cal. June 19, 2015); *Reagan v. Am. Home Mortg. Servicing Inc.*, No. 11-cv-00704-WHA, 2011 WL 2149100, at *2-3 (N.D. Cal. May 31, 2011).

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motions **WITH LEAVE TO AMEND** as follows:

- The DTSA and breach-of-contract claims survive dismissal.
- All of the remaining claims are **DISMISSED WITH LEAVE TO AMEND**.
- Applied's request to strike the state-law claims under the anti-SLAPP statute is **DENIED WITHOUT PREJUDICE**.
- Applied's request to strike the request for punitive damages is **DENIED AS MOOT**.

If Mattson elects to file an amended complaint, it shall do so by **August 15, 2024**. If Mattson does not file an amended complaint by that date, the Court will schedule a case-management conference. By **August 1, 2024**, the Parties shall submit a joint report advising the Court of the status of their mediation proceedings.

**SO ORDERED.**

Dated: July 25, 2024

SUSAN VAN KEULEN
United States Magistrate Judge