1  L. KIERAN KIECKHEFER, SBN 251978
       KKieckhefer@gibsondunn.com
2  Y. ERNEST HSIN, SBN 201668
       EHsin@gibsondunn.com
3  JOSEPH A. GORMAN, SBN 267553
       JGorman@gibsondunn.com
4  LAUREN DANSEY, SBN 311886
       LDansey@gibsondunn.com
5  CHRISTINA E. MYROLD, SBN 324183
       CMyrold@gibsondunn.com
6  GIBSON, DUNN & CRUTCHER LLP
   One Embarcadero Center, Suite 2600
7  San Francisco, California 94111-3715
   Telephone:    415.393.8200
8  Facsimile:    415.393.8306

9  STUART M. ROSENBERG, SBN 239926
       SRosenberg@gibsondunn.com
10 GIBSON, DUNN & CRUTCHER LLP
   310 University Avenue
11 Palo Alto, California 94301
   Telephone:    650.849.5300
12 Facsimile:    650.849.5333

13 JAMES POOLEY, SBN 58041
       James@pooley.com
14 JAMES POOLEY PLC
   325 Sharon Park Drive #208
15 Menlo Park, California 94025

16
17 *Attorneys for Defendant APPLIED MATERIALS, Inc.*

**UNITED STATES DISTRICT COURT**

18 **NORTHERN DISTRICT OF CALIFORNIA**

19 **SAN JOSE DIVISION**

20

21

22 MATTSON TECHNOLOGY, INC., a Delaware
   Corporation,

23          Plaintiff,

24          v.

25 APPLIED MATERIALS, INC., a Delaware
   Corporation, VLADIMIR NAGORNY, an
26 individual, and RENE GEORGE, an individual,

27          Defendants.

28

CASE NO. 5:23-CV-06071-SVK

**DEFENDANT APPLIED MATERIALS,
INC.'S ANSWER TO PLAINTIFF'S
FIRST AMENDED COMPLAINT**

DEMAND FOR JURY TRIAL

Hon. Susan van Keulen

Gibson, Dunn &
Crutcher LLP

## INTRODUCTION AND GENERAL DENIAL

Applied Materials, Inc. ("Applied") is a global leader in the semiconductor industry with thousands of employees and thousands of patents.  This case involves two employees, Rene George and Vladimir Nagorny, who left Mattson Technology, Inc. ("Mattson") (a wholly owned subsidiary of Beijing E-Town Semiconductor Technology Co., Ltd.) and joined Applied more than eight and six years ago, respectively.  While Mattson complains that Applied poached Mr. George and Dr. Nagorny from Mattson, the reality is that Mattson itself recruited dozens of technical employees from Applied within the last several years, including Canfeng "Ken" Lai, who misappropriated critical Applied trade secrets, and as a result, the Alameda County Superior Court enjoined both Lai and Mattson.  That injunction was affirmed by the California Court of Appeal in a published opinion dated November 1, 2023.  *See Mattson Tech., Inc. v. Applied Materials, Inc.*, 96 Cal. App. 5th 1149 (2023).  Three weeks later, Mattson filed its original complaint in this case, alleging that Applied disclosed Mattson's purported trade secrets through documents submitted to the U.S. Patent and Trademark Office.  The technology central to those allegations is not new.  Rather, more than 12 years ago, Mattson purportedly directed its employees to develop a remote plasma processing equipment suitable for processing 450 mm wafers, in what is referred to as "Project Traveler."  Nor is it confidential.  Mattson published, through its own patent filings, the technology resulting from Project Traveler, which it calls Green and Grey Path.  That disclosure is fatal to Mattson's claims.  Applied has at all times complied with the law and has respected Mattson's intellectual property rights.  Applied requires its employees to sign agreements ensuring they will likewise respect intellectual property rights.  Except as expressly admitted in this Answer, Applied denies each and every allegation in the First Amended Complaint and expressly denies that Mattson is entitled to any relief, specifically denying any allegations expressed in or inferred from the introduction, headings, subheadings, or footnotes of the First Amended Complaint, including that Applied is liable to Mattson in any way.  Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, allegations to which no responsive pleading is required shall be deemed to be denied.  Applied reserves the right to seek to amend and/or supplement this Answer.[1]

---

[1] Answers to each paragraph of the First Amended Complaint are made without waiving, but expressly reserving, all rights Applied may have to seek relief by appropriate motions directed to the allegations in the First Amended Complaint or any subsequent amended complaint.

## RESPONSE TO SPECIFIC ALLEGATIONS

## NATURE OF LAWSUIT

1.      Applied admits that the First Amended Complaint alleges claims for trade secret misappropriation against Defendants and breach of contract against the Individual Defendants. Applied denies that any claims alleged against it are sufficiently pleaded, denies that it has committed or is committing any act of trade secret misappropriation, and denies that any claims alleged against it have any merit.   Claims for inducing breach of written contracts, intentional interference with prospective economic relations, negligent interference with prospective economic relations, unfair competition, and conversion were dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 1 regarding those claims are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

2.      Applied denies the allegations and characterizations of Paragraph 2.

## THE PARTIES

3.      Upon information and belief, Applied admits the allegations contained in Paragraph 3.

4.      Applied admits the first sentence contained in Paragraph 4.  Applied admits that it currently employs Rene George.  Applied denies that it currently employs Vladimir Nagorny.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 4, and therefore denies them.

5.      Applied denies that Vladimir Nagorny is presently employed at Applied.   Applied admits that Vladimir Nagorny was employed at Applied and, at one period during his employment with Applied, he was a "Physicist/Scientist Director" at Applied.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 5, and therefore denies them.

6.      Applied admits that Rene George is presently employed at Applied.  Applied denies that Rene George is currently a "General Manager" at Applied.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 6, and therefore denies them.

Gibson, Dunn &
Crutcher LLP

3

1

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

2     7.     To the extent Paragraph 7 alleges legal conclusions, no response is required.  To the

3     extent a response is required, Applied admits that this Court has subject matter jurisdiction pursuant to

4     18 U.S.C. § 1836(c) and 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1357.

5     8.     To the extent Paragraph 8 alleges legal conclusions, no response is required.  To the

6     extent a response is required, Applied admits that it resides in this District and that venue is proper in

7     this District.   Applied admits that copies of documents purporting to be a Mattson Proprietary

8     Information and Innovations Assignment Agreement(s), a Termination Certification, and a Mattson

9     Confidentiality Agreement are attached as Exhibits A, B, C, and E to the First Amended Complaint.

10    Applied denies having committed any wrongful act complained of in the FAC.   Applied lacks

11    knowledge or information sufficient to form a belief regarding the truth of the remaining allegations

12    and characterizations contained in Paragraph 8 and footnote 1, and therefore denies them.

13    9.     Applied admits the allegations in Paragraph 9.

14    ## BACKGROUND

15    10.     Applied admits that plasma dry strip tools are sometimes referred to as plasma ashing

16    tools.  Applied admits that plasma dry strip tools may be used for the removal of materials such as

17    certain types of masking layers from a semiconductor wafer during a semiconductor fabrication

18    process.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the

19    remaining allegations and characterizations contained in Paragraph 10, and therefore denies them.

20    11.     Applied admits the first two sentences contained in Paragraph 11.  Applied admits that

21    "[a] remote plasma chamber [can] include[] a tube with an induction coil about the tube," that "a plasma

22    [can be] induced in the plasma chamber by energizing the induction coil with radiofrequency energy,"

23    and that "[r]adicals and other species generated in a plasma may pass through a separation grid for

24    exposure to a semiconductor wafer in a downstream processing chamber for removal of photoresist."

25    Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining

26    allegations and characterizations contained in Paragraph 11, and therefore denies them.

27    12.     Applied denies that the alleged trade secrets in this case are in fact trade secrets.  Applied

28    lacks knowledge or information sufficient to form a belief regarding the truth of the remaining

Gibson, Dunn &
Crutcher LLP

4

allegations and characterizations contained in Paragraph 12, and therefore denies them.

13.     Applied denies that "Mattson understands and welcomes open competition and the innovation that can result."  Applied denies that it has committed trade secret misappropriation.  The remaining allegations and characterizations contained in Paragraph 13 include relative terms such as "highly competitive" and "specialized," the intended scope of which is unclear, and on that basis, Applied denies the remaining allegations.

14.     Applied admits that Mattson's products include the SUPREMA and NOVYKA families.  Applied admits that Mattson advertises the NOVYKA product family as including selective materials removal and surface treatment products.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 14, and therefore denies them.

15.     Applied denies that the alleged trade secrets in this case are in fact trade secrets.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 15, and therefore denies them.

16.     Applied denies that the alleged trade secrets in this case are in fact trade secrets.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 16, and therefore denies them.

17.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 17, and therefore denies them.

18.     To the extent that Paragraph 18 alleges legal conclusions, no response is required.  To the extent that a response is required, Applied denies the allegations and characterizations contained in Paragraph 18, and specifically denies that the "Green Path" and "Grey Path" approaches constituted trade secrets.

19.     To the extent that Paragraph 19 alleges legal conclusions, no response is required.  To the extent that a response is required, Applied denies the allegations and characterizations contained in Paragraph 19.

20.     To the extent that Paragraph 20 alleges legal conclusions, no response is required.  To the extent that a response is required, Applied denies the final sentence of Paragraph 20 and also denies

that the alleged trade secrets are in fact trade secrets.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 20, and therefore denies them.

21.     To the extent that Paragraph 21 alleges legal conclusions, no response is required.  To the extent that a response is required, Applied denies the final sentence of Paragraph 21 and also denies that the alleged trade secrets are in fact trade secrets.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 21, and therefore denies them.

22.     Applied admits that Mattson has filed and obtained certain patents in the United States, including patent filings that disclosed the alleged "Green Path" and "Grey Path" information before any alleged misappropriation.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 22, and therefore denies them.

23.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 23, and therefore denies them.

24.     Applied admits that Mattson has filed certain patent applications in the United States, including patent filings that disclosed the alleged "Green Path" and "Grey Path" information before any alleged misappropriation.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 24, and therefore denies them.

25.     Applied admits that the patent applications identified in Paragraph 25 were filed on the alleged dates.  Applied denies the last sentence of Paragraph 25.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 25, and therefore denies them.

26.     Applied admits that the document identified in Paragraph 26 is titled "High Efficiency Plasma Source."  Applied denies the remaining allegations in Paragraph 26.

27.     Applied admits that the document identified in Paragraph 27 is titled "Plasma Processing Apparatus."  Applied denies the remaining allegations in Paragraph 27.

28.     Applied admits that the document identified in Paragraph 28 is titled "Plasma Strip Tool with Moveable Insert."  Applied denies the remaining allegations in Paragraph 28.

29.     Applied admits that the document identified in Paragraph 29 is titled "Inductively Coupled Plasma Source for Plasma Processing."  Applied denies the remaining allegations in Paragraph 29.

30.     Applied admits that the document identified in Paragraph 30 is titled "Inductive Plasma Source."  Applied denies the remaining allegations in Paragraph 30.

31.     Applied denies the allegations and characterizations contained in Paragraph 31.

32.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 32, and therefore denies them.

33.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 33, and therefore denies them.

34.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 34, and therefore denies them.

35.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 35, and therefore denies them.

36.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 36, and therefore denies them.

37.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 37, and therefore denies them.

38.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 38, and therefore denies them.

39.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 39, and therefore denies them.

40.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 40, and therefore denies them.

41.     Applied admits that copies of documents purporting to be Proprietary Information and Innovations Assignment Agreements are attached as Exhibits A and B.  Applied admits that the

Exhibits state, "at all times, both during the term of my employment with [Mattson] and after my separation from [Mattson] for any reason, I shall hold in strictest confidence and trust and shall not, directly or indirectly, use or disclose without the prior written authorization of [Mattson], except as may be necessary in the ordinary course of performing my employment duties as an employee of [Mattson], any Mattson Proprietary Information that I may have or acquire during the period of my employment with [Mattson]."  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 41, and therefore denies them.

42.     Applied admits that copies of documents purporting to be Proprietary Information and Innovations Assignment Agreements are attached as Exhibits A and B.  Applied admits that the Exhibits state, "[a]ll Mattson Proprietary Information is and shall be Mattson's sole property or, where applicable, Mattson's assignees.  Accordingly, Mattson (or its assignees) shall solely own all patents, copyrights, mask works, trade secrets and other related rights. I hereby assign to the Company any rights and interest I may have or acquire in Mattson Proprietary Information."  Applied admits that the Exhibits state "that the Company shall acquire ownership, title, and all rights and interest in and to all Mattson Innovations upon creation, that all Mattson Innovations are work made for hire belonging to the Company under applicable law."  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 42, and therefore denies them.

43.     Applied admits that a copy of a document purporting to be a Termination Certification is attached as Exhibit D.  Applied admits that a copy of a document purporting to be an Exit Checklist is attached as Exhibit F.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 43, and therefore denies them.

44.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 44, and therefore denies them.

45.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 45, and therefore denies them.

46.     Applied admits that a copy of a document purporting to be a Confidentiality Agreement is attached as Exhibit C.  Applied admits that the document states, "at any time during or following the term of Employee's employment by Employer, directly or indirectly, disclose, divulge, reveal, report, publish, transfer or use, for any purpose whatsoever, any of such information," and further states, "confidential information of a special and unique nature and value relating to such matters and Employer's trade secrets."  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 46, and therefore denies them.

47.     Applied admits that a copy of a document purporting to be a Confidentiality Agreement is attached as Exhibit C.  Applied admits that the document states, "all right, title and interest in any Protected Information shall be and shall remain the exclusive property of Employer.  Without limiting the generality of the foregoing, Employee hereby assigns and transfers to Employer Employee's entire right, title and interest in and to all inventions including, but not limited to, ideas, improvements, designs and discoveries, whether or not patentable and whether or not reduced to practice, made or conceived by Employee (whether made solely by Employee or jointly with others)."  Applied admits that the document states, "that all such inventions are the sole property of Employer … Employee agrees immediately to disclose to Employer all Protected Information developed in whole or in part by Employee during the term of Employee's employment with Employer and to assign to Employer any right, title or interest Employee may have in such Protected Information. Employee agrees to execute any instruments and to do all other things reasonable requested by Employer (both during and after Employee's employment with Employer) in order to vest more fully in Employer all ownership rights in those items hereby transferred by Employee to Employer."  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 47, and therefore denies them.

48.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 48, and therefore denies them.

49.     Applied admits that a copy of a document purporting to be a Termination Certification is attached as Exhibit E.  Applied lacks knowledge or information sufficient to form a belief regarding

the truth of the remaining allegations and characterizations contained in Paragraph 49, and therefore denies them.

50.     Applied admits that Mr. Rene George joined Applied in January 2015.  Applied admits that Dr. Vladimir Nagorny joined Applied in 2017.  Applied admits that Mr. Rene George supervised Dr. Vladimir Nagorny.  Except as expressly admitted, Applied denies the remaining allegations and characterizations contained in Paragraph 50.

51.     Applied admits that Mr. Rene George joined Applied in January 2015.  Applied admits that Dr. Vladimir Nagorny joined Applied in 2017.  Applied denies the remaining allegations and characterizations contained in Paragraph 51.

52.     Applied denies the allegations and characterizations in Paragraph 52.

53.     Applied admits that it filed U.S. Pat. App. Serial Nos. 17/149,254, 17/149,232, and 18/199,780.  Applied admits that U.S. Pat. App. Serial Nos. 17/149,254 and 17/149,232 were filed on January 14, 2021.  Applied admits that it filed the applications under Applied Materials, Inc. as the Applicant.  Applied admits that the patent applications each include Dr. Vladimir Nagorny and Mr. Rene George as inventors.  Applied admits that the '254 Application was published publicly on July 14, 2022, as U.S. Pat. Pub. No. 2022/0223374, and issued as U.S. Pat. No. 11,658,006 on May 23, 2023.  Applied admits that the '232 Application was published on July 14, 2022, as U.S. Pat. Pub. No. 2022/0223381, and issued as U.S. Pat. No. 11,854,770 on December 26, 2023.  Applied admits that the '780 Application was published as U.S. Pat. Pub. No. 2023/0369017.  Applied denies the remaining allegations and characterizations contained in Paragraph 53 and Footnote 3.

54.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 54, and therefore denies them.

55.     Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in first sentence of Paragraph 55, and therefore denies them.  Applied denies the second sentence of Paragraph 55.

56.     Applied denies the allegations and characterizations in Paragraph 56.

57.     Applied denies the allegations and characterizations in Paragraph 57.

58.     Applied admits that a copy of a document purporting to be '006 Patent is attached as

Exhibit G.  Applied admits that a copy of a document purporting to be '770 Patent is attached as Exhibit H.  Applied admits that a copy of a document purporting to be '017 Publication is attached as Exhibit I.  Applied admits that the image of Fig. 2 in Paragraph 58 appears to be the same as Fig. 2 in the '006 Patent, the '770 Patent, and the '017 Publication.  Except as expressly admitted, Applied denies the remaining allegations and characterizations contained in Paragraph 58.

59.     Applied admits that a copy of a document purporting to be '006 Patent is attached as Exhibit G.  Applied admits that a copy of a document purporting to be '770 Patent is attached as Exhibit H.  Applied admits that a copy of a document purporting to be '017 Publication is attached as Exhibit I.  Applied admits that the '006 Patent at 6:46-55, the '770 Patent at 7:10-19, and the '017 Publication at [0042], state, "The second induction coil includes magnetic field concentrator(s) 280, allowing a placement of the coil in the bottom of the plasma source, as shown in FIG. 2.  The use of magnetic field concentrators 280 increases efficiency of the plasma generation at the bottom of the source and significantly increases the radial control near the substrate (as compared to the absence of magnetic field concentrators).  In some embodiments, induction coil 254 is disposed at a bottom 1/3 height, such as a bottom 1/4 height, of plasma source 222."  Except as expressly admitted, Applied denies the remaining allegations and characterizations contained in Paragraph 59.

60.     Applied denies the allegations and characterizations contained in the first and fourth sentences of Paragraph 60.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in the second and third sentences of Paragraph 60, and therefore denies them.

61.     Applied denies the allegations and characterizations contained in Paragraph 61.

62.     Applied admits that a copy of a document purporting to be '006 Patent is attached as Exhibit G.  Applied admits that a copy of a document purporting to be '770 Patent is attached as Exhibit H.  Applied admits that a copy of a document purporting to be '017 Publication is attached as Exhibit I.  Applied admits that the image of Fig. 1 in Paragraph 62 appears to be the same as Fig. 1 in the '006 Patent, the '770 Patent, and the '017 Publication.  Applied denies the remaining allegations and characterizations contained in Paragraph 62.

63.     Applied admits that a copy of a document purporting to be '006 Patent is attached as

Exhibit G.  Applied admits that a copy of a document purporting to be '770 Patent is attached as Exhibit H.  Applied admits that a copy of a document purporting to be '017 Publication is attached as Exhibit I.  Applied admits that the '006 Patent at 4:43-5:35, the '770 Patent at 5:8-6:2, and the '017 Publication at [0033], [0035]-[0037], state:

> The coil 130 is aligned with the active region in such a way that the top turn of the coil is above the bottom edge 180 of the insert 140 and operates substantially in the active region of the inner volume, while the bottom turn of the coil is below edge 180 and operates substantially outside the active region. The center of the coil is substantially aligned with the edge 180. Within these boundaries one can adjust the coil position for a desired performance. Alignment of the coil with surface edge 180 provides improved source efficiency, namely controlled generation of desired chemical species for plasma processes and delivering them to the wafer with reduced or eliminated losses. For example, plasma sustaining conditions (balance between local generation and loss of ions) might not be the best for generating species for a plasma process. Regarding delivery of the species to the substrate, efficiency can depend on the volume and wall recombination of these particular species. Hence, control of the alignment of the coil with surface edge 180 provides control of the source efficiency for a plasma process.
> . . .
> In some embodiments, surface 180 is aligned with a portion of induction coil 130 (e.g., coil loop 182) along axis 184 by utilizing a suitably sized insert 140 (and top plate 124, which may be a preformed part of the insert 140) to form plasma source 120. Alternatively, surface 180 can be movable along a vertical direction Vi relative to plasma source 120 while a remainder portion of insert 140 is static (e.g., fixed) as part of plasma source 120, in order to provide alignment of surface 180 with a portion of coil 130. For example, an actuator 170 is coupled to insert 140 to adjust a position of surface 180 such that a portion of insert 140 having a first length (L1) is adjusted to a second length (L2). Actuator 170 can be any suitable actuator, for example a motor, electric motor, stepper motor, or pneumatic actuator. In some embodiments, a difference (Δ) in length from L1 to L2 is about 0.1 cm to about 4 cm, such as about 1 cm to about 2 cm. Additionally or alternatively, the insert 140 can be coupled to an actuator (such as actuator 170), and actuator 170 is configured to move the entirety of insert 140 vertically (e.g., along a vertical direction Vi relative to plasma source 120), in order to align surface 180 with a portion of coil 130. Spacers (not shown) can be used to fill gap(s) between insert 140 and another portion of plasma source 120 (such as between top plate 124 and dielectric sidewall 122) that were formed by moving the insert vertically. The spacers may be formed from, for example, a ceramic material, such as a quartz. In general, positioning coil 130 center above surface 180 will increase the efficiency of ionization and dissociation, but reduces the transport efficiency of these species to the substrate, as many of the species may recombine on the walls of the narrow active region. Positioning the coil 130 below surface 180 can improve plasma delivery efficiency, but may decrease plasma generation efficiency.

Applied denies the remaining allegations and characterizations contained in Paragraph 63.

64.   Applied admits that a copy of a document purporting to be '017 Publication is attached as Exhibit I.  Applied admits that the '017 Publication, claim 1, recites:

> 1. A plasma source, comprising:
> a sidewall defining a plasma source interior volume;

a gas injection insert disposed within the plasma source interior volume, the gas injection insert defining a gas injection channel proximate the sidewall;

a first induction coil disposed at a first position proximate the sidewall and disposed around the sidewall;

a first radio frequency power generator coupled with the first induction coil;

a second induction coil disposed at a second position proximate the sidewall and disposed around the sidewall, wherein the second position is below the first position and is at a bottom 1/3 height of the plasma source; and

a second radio frequency power generator coupled with the second induction coil.

Applied admits that the '017 Publication, claim 4, recites, "The plasma source of claim 1, further comprising a magnetic field concentrator disposed around the second induction coil." Applied admits that the '017 Publication, claim 6, recites, "The plasma source of claim 1, wherein a plane of a bottom surface of the gas injection insert is positioned about 1 cm to about 2 cm from a vertical midpoint of the first induction coil." Applied denies the remaining allegations and characterizations contained in Paragraph 64.

65. Applied admits that a copy of a document purporting to be a Patent Assignment Agreement assigning the '254 Application to Applied Materials, Inc. is attached as Exhibit J. Applied admits that the '254 Application Agreement lists conveying parties including Vladimir Nagorny and Rene George. Applied admits that a copy of a document purporting to be a Patent Assignment Agreement assigning the '232 Application to Applied Materials, Inc. is attached as Exhibit K. Applied admits that the '232 Application Agreement lists conveying parties including Vladimir Nagorny and Rene George. Applied admits that a copy of a document purporting to be a Patent Assignment Agreement assigning the '780 Application to Applied Materials, Inc. is attached as Exhibit L. Applied admits that the '780 Application Agreement lists conveying parties including Vladimir Nagorny and Rene George. Applied admits that Dr. Vladimir Nagorny and Mr. Rene George each signed assignment agreements with Applied but specifically denies that they were "contrary" assignment agreements. Applied denies the remaining allegations and characterizations contained in Paragraph 65.

66. Applied denies the allegations and characterizations contained in the first and fourth sentences of Paragraph 66. Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in the second and third sentences of Paragraph 66, and therefore denies them.

67. Applied denies the allegations and characterizations contained in Paragraph 67.

1    68.    Applied denies the allegations and characterizations contained in Paragraph 68.

**FIRST CAUSE OF ACTION**

Misappropriation of Trade Secrets Under 18 U.S.C. § 1836, et seq.

(Against All Defendants)

69.    Applied incorporates by reference its responses to Paragraphs 1 through 68 of the First Amended Complaint.

70.    To the extent Paragraph 70 alleges legal conclusions, no response is required.  To the extent a response is required, Applied denies the allegations and characterizations contained in Paragraph 70, including that the information described in Paragraphs 17–21 of the First Amended Complaint constitute trade secrets.

71.    To the extent Paragraph 71 alleges legal conclusions, no response is required.  To the extent a response is required, Applied denies that the alleged trade secrets are in fact trade secrets.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 71, and therefore denies them.

72.    To the extent Paragraph 72 alleges legal conclusions, no response is required.  To the extent a response is required, Applied denies that the alleged trade secrets are in fact trade secrets, or that they derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, another person who can obtain economic value from their disclosure or use.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 72, and therefore denies them.

73.    To the extent Paragraph 73 alleges legal conclusions, no response is required.  To the extent a response is required, Applied denies that the alleged trade secrets are in fact trade secrets, or that Mattson has undertaken efforts that are reasonable under the circumstances to maintain the secrecy of the trade secrets at issue.  Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained Paragraph 73, and therefore denies them.

74.    To the extent Paragraph 74 alleges legal conclusions, no response is required.  To the extent a response is required, Applied denies the allegations and characterizations contained in the first and fourth sentences of Paragraph 74.  Applied denies that the alleged trade secrets are in fact trade

secrets or that Applied misappropriated the purported trade secrets. Applied lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 74, and therefore denies them.

75.     To the extent Paragraph 75 alleges legal conclusions, no response is required. To the extent a response is required, Applied denies the allegations and characterizations contained in Paragraph 75.

76.     To the extent Paragraph 76 alleges legal conclusions, no response is required. To the extent a response is required, Applied denies the allegations and characterizations contained in Paragraph 76.

77.     To the extent Paragraph 77 alleges legal conclusions, no response is required. To the extent a response is required, Applied denies the allegations and characterizations contained in Paragraph 77.

78.     To the extent Paragraph 78 alleges legal conclusions, no response is required. To the extent a response is required, Applied denies the allegations and characterizations contained in Paragraph 78. Applied denies that it has violated the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq.

79.     To the extent Paragraph 79 alleges legal conclusions, no response is required. To the extent a response is required, Applied denies the allegations and characterizations contained in Paragraph 79.

80.     To the extent Paragraph 80 alleges legal conclusions, no response is required. To the extent a response is required, Applied denies the allegations and characterizations contained in Paragraph 80.

81.     To the extent Paragraph 81 alleges legal conclusions, no response is required. To the extent a response is required, Applied denies the allegations and characterizations contained in Paragraph 81.

### SECOND CAUSE OF ACTION
Breach of Contract
(Against Individual Defendants)

82.     Applied incorporates by reference its responses to Paragraphs 1 through 81 of the First

Amended Complaint.

83.     To the extent Paragraph 83 alleges legal conclusions, no response is required.  To the extent a response is required, Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 83, and therefore denies them.

84.     To the extent Paragraph 84 alleges legal conclusions, no response is required.  To the extent a response is required, Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 84, and therefore denies them.

85.     To the extent Paragraph 85 alleges legal conclusions, no response is required.  To the extent a response is required, Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 85, and therefore denies them.

86.     To the extent Paragraph 86 alleges legal conclusions, no response is required.  To the extent a response is required, Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 86, and therefore denies them.

87.     To the extent Paragraph 87 alleges legal conclusions, no response is required.  To the extent a response is required, Applied lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 87, and therefore denies them.

88.     To the extent Paragraph 88 alleges legal conclusions, no response is required.  To the extent a response is required, Applied denies the allegations and characterizations contained in Paragraph 88.

89.     To the extent Paragraph 89 alleges legal conclusions, no response is required.  To the extent a response is required, Applied denies the allegations and characterizations contained in Paragraph 89.

90.     To the extent Paragraph 90 alleges legal conclusions, no response is required.  To the

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLIED MATERIALS, INC.'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 5:23-CV-06071-SVK

extent a response is required, Applied denies the allegations and characterizations contained in Paragraph 90.

## THIRD CAUSE OF ACTION
Inducing Breach of Written Contracts
(Against Defendant Applied Materials, Inc.)

91.     Applied incorporates by reference its responses to Paragraphs 1 through 90 of the First Amended Complaint.

92.     The Third Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 92 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

93.     The Third Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 93 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

94.     The Third Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 94 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

95.     The Third Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 95 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

96.     The Third Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 96 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

97.     The Third Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the

allegations set forth in Paragraph 97 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

98.     The Third Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 98 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

**FOURTH CAUSE OF ACTION**
Intentional Interference with Prospective Economic Relations
(Against Defendant Applied Materials, Inc.)

99.     Applied incorporates by reference its responses to Paragraphs 1 through 98 of the First Amended Complaint.

100.    The Fourth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 100 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

101.    The Fourth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 101 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

102.    The Fourth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 102 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

103.    The Fourth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 103 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

104.    The Fourth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the

allegations set forth in Paragraph 104 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

**FIFTH CAUSE OF ACTION**
Negligent Interference with Prospective Economic Relations
(Against Defendant Applied Materials, Inc.)

105.    Applied incorporates by reference its responses to Paragraphs 1 through 104 of the First Amended Complaint.

106.    The Fifth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 106 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

107.    The Fifth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 107 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

108.    The Fifth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 108 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

109.    The Fifth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 109 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

**SIXTH CAUSE OF ACTION**
Unfair Competition Under California Business and Professions Code § 17200, et seq.
(Against All Defendants)

110.    Applied incorporates by reference its responses to Paragraphs 1 through 109 of the First Amended Complaint.

111.    The Sixth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the

Gibson, Dunn &
Crutcher LLP

allegations set forth in Paragraph 111 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

112.    The Sixth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 112 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

113.    The Sixth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 113 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

114.    The Sixth Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 114 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

## SEVENTH CAUSE OF ACTION
Conversion
(All Defendants)

115.    Applied incorporates by reference its responses to Paragraphs 1 through 114 of the First Amended Complaint.

116.    The Seventh Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 116 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

117.    The Seventh Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the allegations set forth in Paragraph 117 are irrelevant and no answer is required.  To the extent that any such allegations are not deemed irrelevant, Applied denies such allegations.

118.    The Seventh Cause of Action was dismissed by the Court's order granting in part and denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the

1   allegations set forth in Paragraph 118 are irrelevant and no answer is required.  To the extent that any

2   such allegations are not deemed irrelevant, Applied denies such allegations.

3       119.    The Seventh Cause of Action was dismissed by the Court's order granting in part and

4   denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the

5   allegations set forth in Paragraph 119 are irrelevant and no answer is required.  To the extent that any

6   such allegations are not deemed irrelevant, Applied denies such allegations.

7       120.    The Seventh Cause of Action was dismissed by the Court's order granting in part and

8   denying in part Applied's motion to dismiss Mattson's First Amended Complaint, and, therefore, the

9   allegations set forth in Paragraph 120 are irrelevant and no answer is required.  To the extent that any

10  such allegations are not deemed irrelevant, Applied denies such allegations.

11                                  **PRAYER FOR RELIEF**

12      121.    The Prayer for Relief sets forth the statement of relief requested by Mattson to which

13  no response is required.  Applied denies that Mattson is entitled to any relief against Applied and

14  requests that the Court dismiss all claims with prejudice and order such further relief for Applied as the

15  Court deems just and proper, including but not limited to costs and attorneys' and expert fees pursuant

16  to 18 U.S.C. § 1836(b)(3)(D).

17                                     **JURY DEMAND**

18      122.    The Jury Demand sets forth the statement of relief requested by Mattson to which no

19  response is required.  As noted below, Applied also demands a jury.

20                                 **AFFIRMATIVE DEFENSES**

21      123.    In asserting the following defenses, Applied does not admit that the burden of proving

22  the allegations or denials contained in the defenses is upon Applied; to the contrary, the burden of

23  proving the facts relevant to many of the defenses and the burden of proving the inverse of the

24  allegations contained in many of the defenses is upon Mattson.  Moreover, in asserting any defense,

25  Applied does not admit any liability, but, to the contrary, specifically denies any and all allegations of

26  liability in Mattson's lawsuit.  Without admitting liability as to any of Mattson's causes of action,

27  Applied asserts the following defenses:

28

**First Affirmative Defense**

124.    Mattson's DTSA claim is barred in whole or in part by the applicable statute of limitations.  Actions under the DTSA, "may not be commenced later than 3 years after the date on which the misappropriation with respect to the action would relate is discovered or by the exercise of reasonable diligence should have been discovered."  Thus, any such actions based on conduct prior to November 22, 2020, are time-barred.  On information and belief, Mattson knew or should have known that certain of the alleged acts of misappropriation occurred prior to November 22, 2020.

**Second Affirmative Defense**

125.    Mattson's DTSA claim is barred by the doctrine of laches.  Mattson unreasonably delayed in filing this lawsuit, despite having knowledge of the allegations contained within the First Amended Complaint, prejudicing Applied.

**Third Affirmative Defense**

126.    To the extent Mattson has suffered any damages, it has failed to take reasonable steps to mitigate such damages.

**Fourth Affirmative Defense**

127.    Mattson's DTSA claim is barred, in whole or in part, by the equitable doctrine of unclean hands because Mattson acted unfairly with respect to its alleged claims, injuring Applied.

**Fifth Affirmative Defense**

128.    Mattson's DTSA claim is barred, in whole or in part, by the equitable doctrines of waiver, estoppel, and consent.

**Sixth Affirmative Defense**

129.    Mattson cannot prevail against Applied and cannot recover damages, unjust enrichment, or reasonable royalties, if any, on its DTSA claim because the alleged trade secret information was readily ascertainable by proper means.  All of Mattson's alleged trade secrets are publicly known or readily ascertainable from public sources and lack independent economic value.

**Seventh Affirmative Defense**

130.    Mattson cannot prevail against Defendant and cannot recover damages, unjust enrichment, or reasonable royalties, if any, on its DTSA claim because it has not exercised reasonable

or sufficient efforts to keep each of the alleged trade secrets a secret.

### Eighth Affirmative Defense

131.   Mattson's claims are each barred because the information in question is not a trade secret because the information is and was publicly known prior to the alleged disclosure.  Mattson disclosed the use of a coil with a movable insert by at least August 2020 in U.S. Provisional Application Serial Number 63/071,418 ("'418 Application").  It disclosed the positioning of a coil to surround the bottom insert by at least International Publication Number WO 2013/028313 ("'313 PCT"), published February 2013.  It disclosed the use of a second coil with magnetic field concentrators by at least June 2012, in U.S. Patent Application Publication Number US 2012/0152901 ("'901 Application").  Therefore, each of these secrets was made public prior to Applied's initial disclosure in January 2021.

### Ninth Affirmative Defense

132.   Mattson cannot prevail against Applied and cannot recover damages, unjust enrichment, or reasonable royalties, if any, on its DTSA claim because the alleged trade secrets lack independent economic value.

### Tenth Affirmative Defense

133.   Mattson cannot prevail against Applied and cannot recover damages, unjust enrichment, or reasonable royalties, if any, on its DTSA claim because Applied independently conceived of, and/or developed, the information that Mattson alleges Applied misappropriated.

### Eleventh Affirmative Defense

134.   Mattson's claims are barred because it has suffered no damages.  Mattson disclosed the alleged trade secrets, if not earlier, in its '418 Application (August 2020), '313 PCT (February 2013), and '901 Application (June 2012).  As such, Mattson has not been damaged from Applied's disclosure of the information.

### Twelfth Affirmative Defense

135.   Mattson's alleged damages are too remote or speculative to ascertain or apportion.

### Thirteenth Affirmative Defense

136.   Mattson's alleged damages, if any, were the result of one or more superseding or intervening causes or were caused by the acts and/or failures to act of persons or entities other than

Applied, or caused or contributed to by Mattson's own actions, inactions, negligence, fault, or lack of diligence, not by actions or inactions of Applied, thus barring Mattson from any recovery against Applied.

### Fourteenth Affirmative Defense

137.    To the extent Mattson has suffered any damages, any injunctive or monetary relief is limited to the period (if any) in which Applied retained an advantage as the result of the alleged misappropriation, and in which the alleged trade secrets maintained their trade secret status.

### Fifteenth Affirmative Defense

138.    Applied acted at all times on the basis of a good-faith and reasonable belief that its actions were in compliance and conformity with applicable provisions of law, administrative regulations, orders, rulings, guidance and/or interpretations, and did not willfully violate any such provisions.  Accordingly, remedies such as enhanced or exemplary damages requiring willful violations or bad faith acts are unavailable.

### Sixteenth Affirmative Defense

139.    Matson cannot prevail against Applied and cannot recover damages, unjust enrichment, or reasonable royalties, if any, because Mattson's DTSA claim is frivolous, unreasonable, groundless, and in bad faith.

### Seventeenth Affirmative Defense

140.    Mattson is not entitled to injunctive relief because, at a minimum, it has no irreparable injury, it has an adequate remedy at law for Applied's alleged misappropriation, the balance of hardships do not weigh in its favor, and the public interest would be disserved by an injunction.

### Eighteenth Affirmative Defense

141.    Defendants reserve the right to assert additional defenses as they become known through further investigation and discovery.

### DEMAND FOR JURY TRIAL

142.    Applied demands a jury trial.

1    DATED: September 5, 2024                    Respectfully submitted,

2                                                GIBSON, DUNN & CRUTCHER LLP

3

4                                                By: */s/ L. Kieran Kieckhefer*

5                                                    **GIBSON, DUNN & CRUTCHER**
                                                     L. Kieran Kieckhefer
6                                                    Y. Ernest Hsin
                                                     Stuart M. Rosenberg
7                                                    Joseph A. Gorman
                                                     Lauren Dansey
8                                                    Christina E. Myrold

9                                                    **JAMES POOLEY PLC**
                                                     James Pooley
10

11                                                   *Attorneys for Defendant APPLIED
                                                     MATERIALS, INC.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLIED MATERIALS, INC.'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
CASE NO. 5:23-CV-06071-SVK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## CERTIFICATE OF SERVICE

I, Patricia Belloso, certify that on September 5, 2024, the foregoing **DEFENDANT APPLIED MATERIALS, INC.'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT** was filed with the Clerk of the Court via CM/ECF.  Notice of this filing will be sent electronically to all registered parties by operation of the Court's electronic filing systems.

DATED: September 5, 2024                    By:   /s/ *Patricia Belloso*
                                                          Patricia Belloso